# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00129-CV

**Reagan National Advertising of Austin, Inc., Appellant**

**v.**

**Capital Outdoors, Inc., Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. GN102436, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

Reagan National Advertising of Austin, Inc. (AReagan@) appeals the trial court=s order denying its motion for summary judgment and granting summary judgment in favor of Capital Outdoors, Inc. (ACapital@). Capital bought an advertising easement from Met NYTEX, Ltd. (AMet@) and built an outdoor advertising billboard on Met=s property. Reagan is a former lessee of Met and formerly maintained a billboard on the same land. The lease agreement between Reagan and Met contained a clause prohibiting Met from Areleasing@ the land to other advertisers for five years after the lease=s termination. According to Reagan, this lease clause prohibits Met from conveying, not just from leasing, the property to other advertisers.

In this suit, Reagan attempts to enforce the clause against Met=s grantee, Capital. Because the lease clause is not enforceable against Capital, and because neither Met nor Capital violated its terms by entering an easement agreement, we will affirm the judgment of the trial court.

## BACKGROUND

Reagan leases more than nine hundred outdoor billboard faces in Austin and the surrounding area. This gives it control of more than eighty percent of the local billboard market. In Austin, this dominant market share is particularly valuable because of the City=s restrictions on billboard construction.

The City prohibits the use of off-premise billboards.[1] Austin, Tex. Code of Ordinances ' 25-10-102 (2002). But billboard sites that were already operating when this prohibition was enacted have been Agrandfathered@ and can retain their signs. *See Id.* ' 25-10-152(A). The City also regulates the replacement of signs at these grandfathered sites. To replace a billboard: (1) the City must receive a replacement permit application before the existing billboard is removed, (2) the replacement billboard must be at least twenty-five percent smaller than the existing billboard, and (3) the replacement billboard must be erected within ninety days of the existing billboard=s removal. *Id.* ' 25-10-152(D), (B)(5)(c)(iii). A property owner who does not erect a new billboard within ninety days of an existing billboard=s removal forfeits this valuable grandfathered property right. *See id.* ' 25-10-152(D)(2); *see also Reagan Nat=l Adver. v. Vanderhoof Family Trust*, 82 S.W.3d 366, 368 (Tex. App.CAustin 2002, no pet.).

Met owns a grandfathered site. On May 1, 1998, it leased its site to Reagan for a renewable one-year term. The lease agreement includes a clause prohibiting Met from Areleasing@ the site to other advertisers for five years if it fails to renew with Reagan:

---

**[1] An off-premise sign is a sign advertising something Anot located on the site where the sign is installed, or that directs persons to any location not on that site.** Austin, Tex. Code of Ordinances ' 25-10-3(7) (2002)**. Reagan deals primarily in off-premise signs.**

In the event this lease is not renewed or cancelled, lessor agrees that he will not for a period of five years subsequent to the date of termination, release said premises to any other advertiser other than lessee for advertising purposes.

Reagan maintained a billboard at the site for the next three years. When Met decided not to renew for a fourth term, Reagan reminded it of the restrictive lease clause. Met nevertheless refused to renew the lease. Reagan eventually removed its billboard.

Approximately two months before the lease with Reagan expired, Met sold Capital an easement allowing it to build and maintain a billboard on the site. The granting instrument explicitly makes the easement both perpetual and assignable. It also states that Met does not warrant title to the site against claims that Reagan might make under the lease. Capital has since built and is currently maintaining a billboard on the site.

The day after its lease expired, Reagan filed a lawsuit against the City in federal court. Reagan claimed the City had misconstrued its own ordinances by issuing billboard replacement permits to third parties. It argued that the signs themselves, not the sites, were grandfathered, and that the City had taken Reagan=s property without compensation by issuing replacement permits to Reagan=s competitors. The federal court dismissed the suit for failure to state a claim, explaining that Reagan retains no property interest in a site once its lease expires.

Reagan then filed a state-court lawsuit against Met. In that suit, Reagan sought temporary and permanent injunctions barring Met from conveying or Acomplying with any agreement authorizing the conveyance . . . [of] the property subject to the Lease . . . between Reagan and Met.@ The district court

3

denied Reagan=s request for a temporary injunction. Reagan then nonsuited and filed this lawsuit against Capital.

In this lawsuit, Reagan seeks to enforce the lease clause against Capital. It asked the trial court to declare that the clause is enforceable against Capital and to issue an injunction prohibiting Capital from utilizing the site for advertising purposes. Both parties filed motions for summary judgment. The trial court denied Reagan=s motion and granted Capital=s.

## DISCUSSION

Because the propriety of a summary judgment is a question of law, we review the trial court=s decision *de novo. Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Texas Dep=t of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.CAustin 1999, no pet.). The standards for reviewing a motion for summary judgment are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). When the trial court grants one party=s motion for summary judgment and denies the other, we review both motions and if we find the trial court erred, we will reverse and render the judgment the trial court should have rendered. *See Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex. 1999).

4

In its motion for summary judgment, Capital claims that granting an easement does not violate the restrictive lease provision, which prohibits only A releasing@ the premises. Capital also claims that the lease provision is an unenforceable restraint on alienation of real property. We agree, and will affirm the summary judgment on both grounds.

Reagan=s claim that Met violated the lease provision turns on an unnaturally broad reading of the word A release.@ Restrictive covenants are subject to the normal rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). In interpreting a restrictive covenant, we seek the objective intent of its drafters. *Hodas v. Scenic Oaks Prop. Ass=n*, 21 S.W.3d 524, 528 (Tex. App.CSan Antonio 2000, pet. denied); *see also Wilmoth v. Wilcox*, 734 S.W.2d 656, 658 (Tex. 1987). We do not find this intent by looking at isolated words or phrases; instead, we examine the entire context of the instrument. *See Crispin v. Paragon Homes*, 888 S.W.2d 78, 81 (Tex. App.CHouston [1st Dist.] 1994, writ denied); *Bright v. Grey*, 377 S.W.2d 223, 225 (Tex. Civ. App.CBeaumont 1964, no writ). Doubts about the meaning of a covenant should be resolved against the party seeking to enforce it and in favor of the unrestricted use of land. *Wilmoth*, 734 S.W.2d at 657; *Davis v. Skipper*, 83 S.W.2d 318, 321 (Tex. 1935).[2]

Reagan seeks to construe the lease clause in isolation. It ignores the fact that the instrument containing the clause is itself a commercial lease agreement. But this very fact makes the meaning of the

---

[2] The Texas Property Code requires that A[a] restrictive covenant shall be liberally construed to give effect to its purposes and intent.@ Tex. Prop. Code Ann. ' 202.003(a) (West 1995). This provision does not conflict with the longstanding common-law rule that if there is ambiguity or doubt as to the drafter=s intent, a covenant is to be strictly construed against the party seeking to enforce it and in favor of the free and unrestricted use of land. *See Munson v. Milton*, 948 S.W.2d. 813, 816 (Tex. App.CSan Antonio

clause unmistakable. If Reagan intended to prohibit Met from conveying the site to other advertisers, it would not have used the word Arelease@ when it drafted the agreement. Neither Met nor Capital violated the restriction on releasing the site. Met conveyed an easement to Capital. It did not lease the property.

There is no doubt about the meaning of the clause, but if there were, Reagan would ask that we not resolve that doubt in favor of unrestricted use of land. Instead, Reagan would have us resolve any doubt in a way that totally destroys Met=s grandfathered rights in the billboard site. We decline to do so. But the infirmity of Reagan=s broad reading of the clause is even more serious. If Reagan=s construction were correct, the clause would be void as an unreasonable restraint on alienation.

The rule prohibiting unreasonable restraints on alienation of real property is well established in Texas. *See, e.g.*, *Sonny Arnold, Inc. v. Sentry Sav. Ass=n.*, 633 S.W.2d 811, 813 (Tex. 1994); *Crestview, Ltd. v. Foremost Ins. Co.*, 621 S.W.2d 816, 823 (Tex. Civ. App.CAustin 1981, writ ref=d n.r.e.). Texas courts often look to the Restatement of Property for guidance in deciding whether a restraint on alienation exists. *See, e.g.*, *Sonny Arnold*, 633 S.W.2d at 813. Because Reagan=s interpretation would impose contractual liability on Met for attempting to convey its site, and would terminate the property interest that Met conveyed to Capital, it falls squarely within the Restatement=s definition of a restraint on alienation:

> A restraint on alienation, as that phrase is used in this Restatement, is an attempt by an otherwise effective conveyance or contract to cause a later conveyance . . .
>
> (b)    to impose contractual liability on the one who makes the later conveyance when such liability results from a breach of an agreement not to convey; or

1997, pet. denied).

**6**

(c)   to terminate or subject to termination all or part of the property interest conveyed.

Restatement (First) of Prop. ' 404 (1944).

In deciding whether the restraint is unreasonable, the case of *Baker v. Henderson*, 153 S.W.2d 465 (Tex. 1941), is instructive. In *Baker*, neighborhood landowners sued to enjoin another landowner from building a home on his corner lot. They claimed that deed restrictions prohibiting building Acloser than 75 feet to the property line fronting on any street adjoining said premises@ required him to set his home back seventy-five feet from each of the two streets that abutted his property. *Id*. at 469. Under the plaintiffs= interpretation, the lot was too small for the landowner to build a home. To Asave the conveyance from being void,@ the *Baker* court held that the restriction applied to only one of the streets abutting the land. *Id.* at 471.

Reagan claims that because the lease clause restricts only use of the site, and not its conveyance, it is not an unreasonable restraint on alienation. It reasons that Met is free to convey its site so long as its grantees do not use it for advertising purposes for five years. But Reagan=s argument ignores the fact that under the City ordinances, its interpretation of the lease clause would destroy Met=s grandfathered property right to erect a billboard on that site. Reagan=s interpretation of the clause is akin to the *Baker* plaintiffs= interpretation of the deed restrictions. Had the plaintiffs prevailed in that case, the landowner could still use his residential property, but he was prohibited from building a home on it.

Reagan=s construction of the lease clause is too broad and would create an unreasonable restraint on alienation were we to adopt it. Capital=s motion for summary judgment was therefore properly granted.

In addition to arguing that the trial court erred by granting Capital=s motion for summary judgment, Reagan claims that the trial court should not have denied its motion. Reagan=s entire case turns on its claim that it can enforce the lease clause against Capital, and the bulk of its motion for summary judgment argues this point. Reagan contends that the lease clause creates an equitable servitude enforceable against any grantee of Met who takes with notice. We disagree.

Parties to a covenant restricting the use of land may always enforce it among themselves under general contract principals. *See Evans v. Pollock*, 793 S.W.2d 14, 19 (Tex. App.CAustin 1989), *rev=d on other grounds*, 796 S.W.2d 465 (Tex. 1990). The same is not true of their successors in title. *See Davis*, 83 S.W.2d at 321-22. A restrictive covenant can bind a successor to the burdened land in two ways: as a covenant that runs with the land at law, or as an equitable servitude. *Collum v. Neuhoff*, 507 S.W.2d 920, 922 (Tex. Civ. App.CDallas 1974, no writ).

Reagan does not argue that the lease clause creates a covenant that runs with the land, and its claim that the clause creates an equitable servitude lacks merit.[3]

---

[3] **In its brief, Reagan does argue that the covenant runs with the land, but in its motion for summary judgment, Reagan relied only on an equitable servitude theory: A[T]he present**

covenant is a >personal covenant.=  As such, it does not need to meet elements required of a covenant running with the land and is enforceable by Reagan against all those who take with notice.@  In any case, the lease clause does not meet the many technical requirements for a covenant to run with the land.

For a covenant to run with the land, several technical requirements not present here must be met. *See generally* Howard R. Williams, *Restrictions on the Use of Land: Covenants Running with the Land at Law*, 27 Tex. L. Rev. 419 (1949). But a covenant that does not technically run with the land can still bind successors to the burdened land as an equitable servitude if: (1) the successor to the burdened land took its interest with notice of the restriction, *Collum*, 507 S.W.2d at 922-23; (2) the covenant limits the use of the burdened land, *Clear Lake City Water Auth. v. Clear Lake Util.*, 549 S.W.2d 385, 388 (Tex. 1977); and (3) the covenant benefits the land of the party seeking to enforce it, *Davis*, 83 S.W.2d at 321-22. *See also Baker*, 153 S.W.2d at 469; *McCart v. Cain*, 416 S.W.2d 463, 465 (Tex. Civ. App.CFort Worth 1967, writ ref=d n.r.e.) (both holding that equitable servitudes require a benefitted estate in land).

The lease clause cannot be enforced against Capital as an equitable servitude because Reagan owns no land that benefits from the restriction. In *Davis v. Skipper*, the Texas Supreme Court said of equitable servitudes:

> The existence of an Aeasement@ or Aequity@ in a tract of land growing out of a restrictive covenant as to use can hardly be conceived except in connection with another tract of land, which may be said to be the dominant estate and for which the easement or equity is created. In every case where parties seek to enforce a restrictive covenant, the burden of proof is upon them to establish that the covenant was imposed on defendant=s land for the benefit of land owned by them. It is also well settled that in the absence of proof that a restriction was imposed for the benefit of other land, it is construed as a personal covenant merely with the grantor.

*Davis*, 83 S.W.2d at 321-22. We agree with the *Davis* court that it is difficult to conceive of an equitable servitude except in connection with a benefitted tract of land for which the servitude was created. The law allows upstream land-use agreements to burden downstream property ownersCwhether the burden is

**10**

enforced as an equitable servitude or a covenant that runs with the land C primarily because of the benefits such agreements bestow on other lands. *See Pierson v. Canfield*, 272 S.W. 231, 233 (Tex. Civ. App. CDallas 1925, no writ); *cf. Davis*, 83 S.W.2d at 321-22.

Reagan presents us with a very different picture of the law. It claims that all covenants restricting the use of real property fall into one of two categories: (1) covenants that run with the land and (2) personal covenants. It then claims that *all* personal covenants are enforceable by the original party against both the other original party and anyone who took the burdened land with notice of the restriction.

To support this claim, Reagan cites to language in *Collum v. Neuhoff* and other cases that seems to equate personal covenants with equitable servitudes:

> The Texas authorities have long recognized the distinction between Areal@ and Apersonal@ covenants. Those in the first category are said to run with the land at law, while a Apersonal@ covenant is often referred to as an equitable Areservation@ or Aservitude@ which may be binding on successors in interest even though the traditional *legal* test of Spencer=s case . . . are not met.

*Collum*, 507 S.W.2d at 922. *Collum* then emphasizes that A[t]he key to enforceability of equitable covenants against subsequent owners is the fact that they took with notice of the covenant or servitude.@ *Collum*, 507 S.W.2d at 922-23; *see also Frey v. Decordova Bend Estates Owners Ass=n,* 632 S.W.2d 877, 879 (Tex. App. CFort Worth 1982) (citing *Collum*), *aff=d*, 647 S.W.2d 246 (Tex. 1983).

We read *Collum* to mean that personal covenants *may* be enforceable as equitable servitudes so long as all the requirements are met, chiefly notice to the successor to the burdened land.

**11**

*Collum* could not, and does not purport to, change *Davis*=s requirement thatCunless the parties are in privity of contractCa personal covenant cannot be enforced by one who does not own benefitted land.

Reagan=s interpretation of this caselaw is in error. By equating equitable servitudes with personal covenants, Reagan implies that only the original benefitted party can enforce an equitable servitude. But it is well established that the benefit, as well as the burden, of an equitable servitude can run to successors in title. *See Ortiz v. Jeter*, 479 S.W.2d 752, 759 (Tex. Civ. App.CSan Antonio 1972, writ ref=d n.r.e.). Reagan=s interpretation also forces it to claim that the *Davis* court is actually writing about real covenants instead of equitable servitudes in the above quoted passage.

The lease clause in question only gave Reagan contract rights against Met. It did not create an equitable servitude that binds Capital. Reagan=s motion for summary judgment was therefore properly denied.

Reagan also argues that the trial court should not have awarded attorney=s fees to Capital in the amount of $21,471.54. Specifically, Reagan claims that because Capital did not present proof of the reasonableness and necessity of its attorney=s fees, there was no evidence to support the award. Because Reagan raises this argument for the first time on appeal, we conclude that it has not preserved the issue and we will not address its merits. *See* Tex. R. App. P. 33.1(a).

To preserve a complaint for appellate review, a party must have presented its complaint to the trial court Aby a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought . . . with sufficient specificity to make the trial court aware of the complaint.@ *Id*.

Where the objection at trial is not the same as the complaint presented on appeal, the complaint is not preserved for appellate review. *See Rogers v. Stell*, 835 S.W.2d 100, 101 (Tex. 1992).

At the hearing on attorney=s fees, Reagan made only one objection. When Capital attempted to introduce into evidence pleadings and orders from other lawsuits in which Reagan was involved, Reagan objected on the grounds of hearsay and relevancy. Capital responded by offering the pleadings not for their truth but for the limited purpose of showing that Reagan was involved in numerous disputes. The trial court admitted the evidence for the limited purpose and signed the final judgment form. Reagan made no further objections.

Reagan=s sole objection to Capital=s evidence did not raise the complaint Reagan now asserts on appeal and is not sufficient to preserve error. *See, e.g.*, *Holland v. Hayden*, 901 S.W.2d 763, 765 (Tex. App.CHouston [14th Dist.] 1995, writ denied) (motion for new trial alleging no evidence or insufficient evidence to support award of attorney=s fees did not preserve complaint that judgment improperly awarded attorney=s fees twice). At the hearing, Reagan never complained that there was no evidence or insufficient evidence to support an award of attorney=s fees. Moreover, the record does not indicate that Reagan filed a motion for a new trial or any other post-judgment motion bringing to the trial court=s attention its sufficiency complaint. Because Reagan did not afford the trial court the opportunity to correct its alleged mistake, the error was not preserved for appellate review. *Id*.

## CONCLUSION

**We overrule Reagan=s issues and affirm the trial-court judgment.**

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed

Filed: **October 24, 2002**

Publish