NO. 07-09-00095-CV

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL A

 APRIL 12, 2010

 CECIL HICKS, APPELLANT

 v.

 TIM CASTILLE, APPELLEE

 FROM THE 31ST DISTRICT COURT OF WHEELER COUNTY;

 NO. 12,172; HONORABLE STEVEN RAY EMMERT, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

 OPINION

 Cecil Hicks appeals from the trial court’s summary judgment in favor of Tim Castille. At issue
is the precise nature of Castille’s right of first refusal as to certain property. The trial court
held that Castille has a contractual right to purchase an entire four-acre tract intact, rather than
just a fraction of the tract, if he has the opportunity to exercise his right of first refusal. The
trial court also concluded that Castille has a contractual right to the benefits of the tower lease
in effect on the four-acre tract and that Hicks’s contemplated sale of approximately .28 acre and
cancellation of the tower lease for $50,000.00 would constitute a material breach of the parties’
agreement. Hicks complains that the trial court erred by so concluding and contends that he was
entitled to summary judgment that he complied with the terms of their agreement by giving Castille
notice of the terms of the contemplated sale of the .28 acre.

 We reverse, render in part, and remand in part.

 Factual and Procedural History

 Castille purchased from Hicks ninety-six acres of a 100-acre tract of land in Wheeler County.
The remaining four acres included a parcel of approximately .28 acre subject to a lease agreement
between American Tower, L.P. and Hicks. Castille and Hicks agreed that Castille would hold a right
of first refusal as to the four acres (the Agreement). The Agreement provides as follows:

 For and in consideration of the sum of TEN AND NO/100 ($10.00) DOLLARS, the purchase of certain
 real estate located in Wheeler County, Texas, owned by CECIL HICKS, hereinafter referred to as
 “Hicks,” by TIM CASTILLE, hereinafter referred to as “Castille,” that the said Hicks gives
 Castille the right of first refusal to purchase a four (4) acre tract of land and the American
 Tower Lease currently in effect on said land, said four acres more fully described by metes and
 bounds on Exhibit “A” attached hereto and incorporated herein for all purposes.

 Such right of first refusal shall be exercised within sixty (60) days of receipt of written
 notice via certified mail, return receipt requested, from Hicks to Castille, that Hicks no
 longer desires to use such real estate or desires to sell same. In the event Castille does not
 exercise the right to purchase within sixty (60) days, this right of first refusal shall
 terminate and be of no further force and effect.

 DATED this 30 day of May, 2006.

Both Hicks and Castille signed the Agreement. The issue in this case centers on whether the
Agreement would permit the sale of the .28 acre subject to the lease or whether the four-acre tract
must remain intact.

 The parties agree that, on April 21, 2008, Hicks sent Castille a notice of intent to sell a
.28-acre tract included in the four-acre tract on which Castille held a right of first refusal.
According to Hicks, Castille then had sixty days to exercise his then-matured option to purchase the
.28 tract on the same terms to which American Tower and Hicks had agreed: $50,000.00. Castille did
not exercise his option to purchase the .28 acre. Instead, on June 18, 2008, he filed suit for
declaratory relief. On competing motions for summary judgment, the trial court granted Castille’s
motion, denied Hicks’s motion, and awarded Castille $5,200.00 in attorney’s fees.

 Standard of Review

 By twelve issues, Hicks contends that the trial court erroneously granted Castille’s motion
for summary judgment and erroneously denied his motion for summary judgment. Both parties' motions
sought summary judgments that would declare the parties' rights under the agreement, and each party
requested attorney’s fees.

 We look to the procedure used to resolve the issue below to determine the standard of review
on appeal. City of Galveston v. Tex. Gen. Land Office, 196 S.W.3d 218, 221 (Tex.App.—Houston [1st
Dist.] 2006, pet. denied). When a trial court resolves a declaratory judgment action on competing
motions for summary judgment, "we review the propriety of the declaratory judgment under the same
standards that we apply in reviewing a summary judgment." Id.

 We review a trial court's decision to grant or to deny a motion for summary judgment de novo.
See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex., 253 S.W.3d 184, 192 (Tex. 2007). Although
the denial of summary judgment is ordinarily not appealable, we may review such a denial when both
parties moved for summary judgment and the trial court granted one and denied the other. Id. When
reviewing competing motions for summary judgment, we review the summary judgment evidence presented
by each party, determine all questions presented, and render the judgment that the trial court
should have rendered. Id.; FWT, Inc. v. Haskin Wallace Mason Prop. Mgmt., L.L.P., 301 S.W.3d 787,
792 (Tex.App.—Fort Worth 2009, pet. filed).

 Analysis

A. Rules of Construction

 The trial court’s judgment adopted Castille’s construction of the Agreement. Castille reads
the Agreement as allowing Hicks to sell the four-acre tract subject to the right of first refusal
only as one entire parcel.[1] In other words, he reads the Agreement as one which would prohibit
Hicks from selling a portion, rather than the entirety, of the four-acre tract. Hicks, on the other
hand, reads the Agreement without such restriction and maintains that the Agreement permits such a
sale of a portion of the four-acre tract so long as he notifies Castille in accordance with the
terms of the Agreement.

 In construing a written contract, our primary concerns are to ascertain and to give effect to
the parties' intentions as expressed in the document. Frost Nat'l Bank v. L&F Distribs., Ltd., 165
S.W.3d 310, 311–12 (Tex. 2005). In doing so, we consider the entire writing and attempt to
harmonize and give effect to all of the provisions of the contract by analyzing the provisions with
reference to the whole agreement. Id. at 312. We do not give any single provision controlling
effect. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003). We construe a contract
“from a utilitarian standpoint bearing in mind the particular business activity sought to be served”
and “will avoid[,] when possible and proper[,] a construction which is unreasonable, inequitable,
and oppressive.” Frost Nat'l Bank, 165 S.W.3d at 312 (quoting Reilly v. Rangers Mgmt., Inc., 727
S.W.2d 527, 530 (Tex. 1987)). If, after we apply the relevant rules of construction, we can give a
contract a definite or certain legal meaning, the contract is unambiguous, and we construe it as a
matter of law. Id. A contract is not ambiguous simply because the parties disagree over its
interpretation.[2] Markert v. Williams, 874 S.W.2d 353, 355 (Tex.App.—Houston [1st Dist.] 1994,
writ denied). If a contract may be construed in two ways, one of which validates the contract and
the other of which invalidates it, we must adopt the construction that validates the contract.
Harris v. Rowe, 593 S.W.2d 303, 306 (Tex. 1980); Hackberry Creek Country Club, Inc. v. Hackberry
Creek Home Owners Ass'n, 205 S.W.3d 46, 56 (Tex.App.—Dallas 2006, pet. denied).

B. Rights of First Refusal

 1. What a holder of a right of first refusal can do

 A right of first refusal, also called a preferential right or a preemptive right, is a right
granted to a party giving him or her the first opportunity to purchase property if an owner decides
to sell it. Mandell v. Mandell, 214 S.W.3d 682, 688 (Tex.App.—Houston [14th Dist.] 2007, no pet.);
Abraham Inv. Co. v. Payne Ranch, Inc., 968 S.W.2d 518, 524 (Tex.App.—Amarillo 1998, pet. denied).
Sister courts have described a preferential right as a dormant option. Mandell, 214 S.W.3d at 688;
A.G.E., Inc. v. Buford, 105 S.W.3d 667, 673 (Tex.App.—Austin 2003, pet. denied). A right of first
refusal is generally well understood in the business world to mean that the rightholder must be
given an opportunity to purchase the property from the property owner on the terms offered by any
third party. Abraham Inv. Co., 968 S.W.2d at 524.

 Once the property owner provides the terms of that third-party offer to the rightholder, the
rightholder then has the power to accept or reject the offer. City of Brownsville v. Golden Spread
Elec. Coop., Inc., 192 S.W.3d 876, 880 (Tex.App.—Dallas 2006, pet. denied); Abraham Inv. Co., 968
S.W.2d at 524. Indeed, when a property owner expresses the intention to sell the property, the
rightholder is obligated to elect to either purchase the property or permit the property owner to
sell it. Mandell, 214 S.W.3d at 688; A.G.E., 105 S.W.3d at 673. So, generally, when the property
owner gives notice of his intent to sell, the preferential right matures or "ripens" into an
enforceable option. Golden Spread Elec. Coop., 192 S.W.3d at 880; Abraham Inv. Co., 968 S.W.2d at
524. The terms of the option are formed by both the provisions granting the preferential right and
the terms and conditions of the third-party offer presented to the rightholder. Abraham Inv. Co.,
968 S.W.2d at 524–25.

 The rightholder's exercise of the option to purchase must be positive, unconditional, and
unequivocal. Tex. State Optical, Inc. v. Wiggins, 882 S.W.2d 8, 10–11 (Tex.App.—Houston [1st Dist.]
1994, no writ). If the rightholder proposes a new demand, condition, or modification of the terms,
he is treated as having rejected the offer. See Golden Spread Elec. Coop., 192 S.W.3d at 880; Tex.
State Optical, 882 S.W.2d at 11. When the rightholder notifies the property owner of his or her
acceptance of the offer, a contract between the rightholder and the property owner is created.
Golden Spread Elec. Coop., 192 S.W.3d at 880.

 2. What the holder of a right of first refusal cannot do

 Though a right of first refusal may mature into an option, it remains distinct from an option
in that the holder of the option purchases the right to compel a sale of property on the stated
terms before the expiration of the option. See Comeaux v. Suderman, 93 S.W.3d 215, 219–20
(Tex.App.—Houston [14th Dist.] 2002, no pet.); see also Sinclair Ref. Co. v. Allbritton, 147 Tex.
468, 475, 218 S.W.2d 185, 188–89 (Tex. 1949). The holder of a right of first refusal has no right
to compel a sale or to prevent a sale; he or she has only the right to be offered the property at a
fixed price or at a price offered by a bona fide purchaser if and when the owner decides to sell.
Abraham Inv. Co., 968 S.W.2d at 525; Riley v. Campeau Homes, Inc., 808 S.W.2d 184, 187
(Tex.App.—Houston [14th Dist.] 1991, writ dism'd). The holder of a right of first refusal cannot
compel an unwilling owner to convey the property. Riley, 808 S.W.2d at 187.

 Unless the property owner and the rightholder have agreed to terms on price, the rightholder
cannot fix the price because the price is determinable only when a willing seller receives an
acceptable offer from a bona fide purchaser. See Forderhause v. Cherokee Water Co., 623 S.W.2d 435,
439 (Tex.Civ.App.—Texarkana 1981), rev'd on other grounds, 641 S.W.2d 522 (Tex. 1982). The
rightholder does not have the privilege to negotiate with the seller regarding the terms of the
third-party offer. See Abraham Inv. Co., 968 S.W.2d at 525. The owner of property subject to a
right of first refusal remains the master of the conditions under which he or she will relinquish
interest in the property so long as those conditions are commercially reasonable, imposed in good
faith, and not specifically designed to defeat the right of first refusal.[3] See McMillan v.
Dooley, 144 S.W.3d 159, 176 (Tex.App.—Eastland 2004, pet. denied) (quoting W. Tex. Transmission,
L.P. v. Enron Corp., 907 F.2d 1554, 1563 (5th Cir. 1990)).

C. Construing the Agreement

 Having reviewed the rules we must employ to construe agreements in general and the general
principles concerning rights of first refusal, we now examine the Agreement between Hicks and
Castille.

 We begin by observing that alienability is a legal incident of property, and restraints
against it are generally contrary to public policy. See Trustees of Casa View Assembly of God
Church v. Williams, 414 S.W.2d 697, 702 (Tex.Civ.App.—Austin 1967, no writ). The right of
alienation is an inherent and inseparable quality of an estate in fee simple. Potter v. Couch, 141
U.S. 296, 315 11 S.Ct. 1005, 35 L.Ed. 721 (1890); Williams v. Williams, 73 S.W.3d 376, 379
(Tex.App.—Houston [1st Dist.] 2002, no pet.). A restraint on alienation is “an attempt by an
otherwise effective conveyance or contract to cause a later conveyance . . . to impose contractual
liability on the one who makes the later conveyance when such liability results from a breach of an
agreement not to convey; or . . . to terminate or subject to termination all or part of the property
interest conveyed.” Navasota Res., L.P. v. First Source Tex., Inc., 249 S.W.3d 526, 537-538
(Tex.App.—Waco 2008, pet. denied) (adopting, as have other Texas courts, the Restatement’s
definition of restraint on alienation and quoting Restatement of Property § 404(1)(b), (c)).[4] “A
restriction . . . not forbidding alienation to particular persons or for particular purposes only,
but against any and all alienation whatever during a limited time, of an estate in fee, is likewise
void, as repugnant to the estate devised to the first taker, by depriving him during that time of
the inherent power of alienation.” Williams, 73 S.W.3d at 379–80 (quoting Potter, 141 U.S. at 315);
see also O'Connor v. Thetford, 174 S.W. 680, 681, 682 (Tex.Civ.App.—San Antonio 1915, writ ref’d)
(observing that “[h]e would certainly be a poor owner who was required to hold property all his life
without the power to sell it”).

 Were we to adopt Castille’s construction of the Agreement, we would be enforcing what appears
to be an unreasonable restraint on alienation: an outright prohibition of indeterminate duration
from selling any portion of the land in question less than four acres. See Reagan Nat'l Adver. of
Austin v. Capital Outdoors, 96 S.W.3d 490, 494–95 (Tex.App.—Austin 2002, pet. granted, judgmn’t
vacated w.r.m.) (concluding that “appellant’s construction of the lease clause is too broad and
would create an unreasonable restraint on alienation were we to adopt it”).

 Castille has not directed this Court to a case which would support the position that a
landowner may not partition or sell portions of the property described in an agreement conferring a
right of first refusal.[5] And we have found but one that briefly addresses this issue; it,
however, does so in a slightly different context and supports the position contrary to Castille’s.
See Barrows v. Ezer, 668 S.W.2d 854, 855 (Tex.App.—Houston [14th Dist.] 1984, writ ref’d n.r.e.).
At issue in Barrows was the enforceability of a provision in a will that required the devisees to
keep the bequeathed ranch intact for twenty-five years and also maintain the name of the ranch and
make certain that the livestock on the ranch bore the testator’s recorded brand for twenty-five
years. Id. The appellate court affirmed the trial court’s conclusion that this attempted restraint
on alienation was void. Id. at 856. Of course, the will provision in Barrows attempted to do more
than simply keep the ranch intact, but the case remains instructive in its treatment of the
restraint on alienation as it relates to an attempt to prohibit a transfer of a portion of the land
at issue.

 Similarly, here, the Agreement, as Castille would have us read it, would serve to wholly
prohibit Hicks – regardless of his compliance with the notice requirements – from selling .28 acre,
one acre, two acres, or any portion of the land less than four acres. This construction, then,
would amount to a nearly absolute prohibition against conveying any of the land less than four
acres, and we have no concrete indication of the duration from which we could determine whether it
is reasonable.[6] Such a restraint on alienation of property has long been disfavored.

 Although the Agreement does refer to “the four-acre tract,” it does not specifically provide
that the right of first refusal is limited to only the four-acre tract intact. The parties could
have negotiated more specific terms but did not do so. We will not read terms into the Agreement,
especially not when those terms would lead to an unreasonable construction.

 Adhering to the relevant rules of construction, we have examined the Agreement from a
utilitarian perspective, bearing in mind the purposes and restrictions associated with a right of
first refusal, and have construed the Agreement in such a way as to not invalidate it. See Frost
Nat'l Bank, 165 S.W.3d at 312; Hackberry Creek Country Club, 205 S.W.3d at 56. Having done so, we
conclude that the Agreement permits the sale of a portion of the four acres so long as Hicks gives
proper notice in accordance with the Agreement. To hold otherwise would cause the right of first
refusal to represent an unreasonable restraint on alienation by prohibiting Hicks from selling any
portion of the tract less than four acres. The converse application would also be unreasonable,
permitting the right of refusal to do something it must not do; to hold that Castille has a right to
buy all four remaining acres intact would run afoul of the well-established rule that a holder of a
right of first refusal cannot compel the owner to sell the property at issue. That is, to read the
Agreement to mean that Hicks can only sell the entire four-acre tract of land could have the
practical effect of forcing him to sell land that he does not wish to sell. We will not construe
the Agreement to create a right of first refusal that is inconsistent with the principles concerning
such rights.

 Conclusion

 In order to conclude, as did the trial court, that the contemplated sale from Hicks to
American Tower constituted a breach of the Agreement, one must read the Agreement as permitting sale
of only the four-acre tract in its entirety. This all-or-nothing construction is problematic;
either it disallows Hicks to sell a portion of his property infringing on his ownership of the
property or it compels him to sell the land in its entirety which may be and, in this instance, is
more than he desired to sell.[7]

 The trial court erred by concluding that Castille has a contractual right to purchase the
entire four-acre tract intact, that Castille also had a contractual right to the tower lease
benefits, and that the contemplated sale between Hicks and American Tower would represent a material
breach of the Agreement. Application of the rules of construction lead us to conclude that the
Agreement permitted the sale of a portion of the four acres so long as Hicks gave proper notice and
the third-party offer was commercially reasonable, imposed in good faith, and not specifically
designed to defeat the right of first refusal. Since the parties agree that Hicks gave proper
notice and that Castille did nothing to exercise his then-matured option to purchase the .28 acre
and since there is no evidence before this Court to indicate that the terms of the sale between
Hicks and American Tower were commercially unreasonable, not imposed in good faith, or specifically
designed to defeat Castille’s right of first refusal, we render the judgment that the trial court
should have rendered: The evidence establishes that Hicks gave the requisite notice of his intent
to sell .28 acre of the four acres and provided the terms on which he contemplated selling to
American Tower; that, upon such notice, Castille’s right of first refusal as to the .28 acre matured
into an option to purchase the .28 acre on those terms; that Castille failed to exercise such
option; and that, due to such failure, Castille’s right to purchase the .28 acre expired.

 Because we so hold, we reverse the trial court's summary judgment in favor of Castille and
render judgment in favor of Hicks that Castille’s right of first refusal was invoked and, having
remained unexercised, lapsed. We also reverse the trial court’s award of attorney’s fees to
Castille and remand the cause to the trial court to reconsider the equitable and just award of
reasonable and necessary attorney’s fees. See Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon
2008); Nw. Austin Mun. Util. Dist. No. 1 v. City of Austin, 274 S.W.3d 820, 840 (Tex.App.—Austin
2008, pet. denied).

 Mackey K. Hancock
 Justice

-----------------------
 [1] Alternatively, Castille argues that the terms of the contemplated sale of the .28 acre from
Hicks to American Tower for $50,000.00 was not commercially reasonable. We have no evidence before
us that the terms of the contemplated sale were unreasonable. Assuming we may consider Castille’s
affidavit for the proposition that the terms of the sale were commercially unreasonable, we conclude
that his general statements regarding the fair market value per acre of farm land (specifically
excluding conveyance of mineral rights) in Wheeler County do not directly address the price per acre
on which improvements have been made. That is to say, to the extent Castille’s affidavit can be
considered, it is not relevant to the fair market value of land in Wheeler County on which a tower
structure has been erected.

 [2] We add that a party may not introduce parol evidence to vary the terms of an unambiguous
contract. Markert, 874 S.W.2d at 355. For this reason, we do not consider the contents of
Castille’s affidavit concerning the negotiations surrounding the Agreement.
 [3] Castille points to no evidence that the contemplated sale was specifically designed to
defeat his rights to the tower lease. Though the sale may have ultimately done so, to the extent
the Agreement conferred any rights to the lease to Castille, we have no evidence that the
contemplated sale was designed with that specific purpose in mind. Since he was not a party to the
lease between Hicks and American Tower, Castille could not have agreed to the termination of the
lease. Had Castille exercised the option to purchase when it matured, he may have then been in a
position to negotiate with American Tower regarding the status of the lease.
 [4] See Procter v. Foxmeyer Drug Co., 884 S.W.2d 853, 858–59 (Tex.App.—Dallas 1994, no writ)
(providing a thorough discussion of the applicability of the Restatement (Second) to restraints on
alienation in the commercial transaction context as opposed to the donative transfer context); see
also Sonny Arnold, Inc. v. Sentry Sav. Ass'n, 633 S.W.2d 811, 814 (Tex. 1982); Mattern v. Herzog,
367 S.W.2d 312, 319 (Tex. 1963); Deviney v. Nationsbank, 993 S.W.2d 443, 449 (Tex. App.—Waco 1999,
pet. denied); Randolph v. Terrell, 768 S.W.2d 736, 738–39 (Tex. App.—Tyler 1987, writ denied).

 [5] We note the distinction between the instant case and the situations examined in such cases
as FWT, Inc., 301 S.W.3d at 792–93, McMillan, 144 S.W.3d at 178–79, and Riley, 808 S.W.2d at 189.
In these cases, the terms of the contemplated sale went beyond the scope of the right of first
refusal. As a general rule, the holder of a preferential right cannot be compelled to purchase
assets beyond those included within the scope of the agreement subject to the preferential right in
order to exercise that right. See Navasota Res., 249 S.W.3d at 535. Unlike the rightholders in
these cases, Castille is not faced with an offer that goes beyond the scope of the agreement. To
the contrary, American Tower offered to purchase from Hicks only .28 acre of the four acres on which
Castille holds a right of first refusal.

 [6] O’Connor and a number of other cases suggest that even restrictions that amount to an
outright prohibition of transfer may be valid if those restrictions are of reasonable duration. 174
S.W. at 681. Here, there is no express duration of the Agreement.
 [7] Taken to its logical conclusion, Castille’s construction of the agreement that Hicks must
sell the four-acre parcel in its entirety and with the tower lease in effect would vest in Castille
the power to force Hicks and American Tower to remain in the lease agreement. We will not read a
contract in such a way as to lead to an absurd result.