**Affirmed and Memorandum Opinion filed December 5, 2023**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00774-CV

---

**BLUE SKY SATELLITE SALES & THEATER SERVICES, LLC, Appellant**

**V.**

**K18TH, LLC, Appellee**

---

**On Appeal from the 146th District Court**
**Bell County, Texas**
**Trial Court Cause No. 313 015-B**

---

### MEMORANDUM OPINION

Appellant Blue Sky Satellite Sales & Theater Services, LLC (Blue Sky) appeals the trial court's grant of traditional summary judgment in favor of appellee K18th, LLC (K18).[1] In four issues appellant contends that the trial court erred. We affirm.

---

[1] The Third Court of Appeals transferred this case to this court pursuant to Texas Supreme Court Transfer Order, Misc. Docket No. 22-9083. *See* Tex. Gov't Code § 73.001(a).

## BACKGROUND

Blue Sky and Killeen 18th St. LLC (Killeen) entered into an agreement entitled "Right of Entry" (ROE) granting Blue Sky the right to "market, offer, sell and distribute broadband internet, television and video programing services to the residents of Patriot Landing Apartments." The ROE's initial term was ten years. Approximately five years into the ROE's initial term, K18 bought the property from Killeen.[2] After K18 purchased the property, a dispute arose between Blue Sky and K18 regarding whether K18 was bound under the terms of the ROE. Blue Sky filed suit against K18 for breach of contract.[3]

K18 filed a traditional motion for summary judgment arguing that: (1) K18 was not a party to the ROE; (2) K18 never assumed the contract; and (3) Blue Sky could not prove which version of the ROE is enforceable. K18 argued that under section 7.10 of the ROE a written assumption is required to be enforceable. Section 7.10 provides:

> If the Owner sells, conveys, or transfers the Property, the sale, conveyance of transfer will be made subject to this Agreement, and Owner will have no liability for any obligations arising under this Agreement after any sale, conveyance or transfer if (a) proper notice is delivered to all parties involved in the transfer or assignment as set forth in this Section 7.10 and (b) the transferee assumes this Agreement in writing.

K18 argued that because neither notice nor written assumption exists that K18 did not assume the agreement. K18 attached the affidavit of its managing partner attesting that no such writing exists. K18 further pointed to the testimony of Blue Sky's President and CEO admitting that no such writing exists.

[2] Killeen is not a party to this appeal.

[3] Blue Sky also brought claims for tortious interference against K18 and a third party. Those claims have been resolved and are not at issue on appeal.

In its response to K18's summary judgment motion, Blue Sky argued that K18 was aware of the ROE when it purchased the property, that Blue Sky and K18 had multiple conversations about the ROE both before and after K18 purchased the property, that K18 continued to advertise and promote the services of Blue Sky, and that Blue Sky continued to offer services pursuant to the ROE after K18 purchased the property. Blue Sky also contended that K18 was the successor of the prior owner. Blue Sky attached to its response the ROE and the affidavit of its president, Brandon Swenson. Swenson testified that before, during, and after the sale of the property, Blue Sky serviced and provided new installations pursuant to the ROE and that K18 continued to advertise Blue Sky's services. Blue Sky argued that it "has shown the existence of genuine issues of material fact with regard to the existence of the [ROE], notice requirements of the [ROE], Right to Cure issue, Assignment and assumption by [K18] of each of the elements." Blue Sky argued that K18 assumed the ROE "by receiving notice of the existence of the [ROE] via due diligence and delivery of the [ROE] from [Blue Sky's] president . . ., the seller and others."

The trial court granted K18's motion for summary judgment without stating the reasons therein.[4] Blue Sky filed a motion for new trial and a motion to modify the judgment that the trial court denied.

### STANDARD OF REVIEW

We review a summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The movant bears the burden of proof to show that no genuine issue of material fact exists and it is

---

[4] The trial court rendered judgment granting K18's dismissal of its counterclaims without prejudice and expressly stated that the judgment "disposes of all parties and claims and is a final and appealable judgment."

3

entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). We view the evidence in the light most favorable to the nonmovant, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Fielding*, 289 S.W.3d at 848. "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal" of summary judgment. Tex. R. Civ. P. 166a(c). "This Court has 'often held that a party sufficiently preserves an issue for review by arguing the issue's substance, even if the party does not call the issue by name.'" *Li v. Pemberton Park Cmty. Ass'n*, 631 S.W.3d 701 (Tex. 2021) (quoting *St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 214 (Tex. 2020)); *see also Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781 at 791 (Tex. 2019) ("Although the newspaper did not label the statements as 'accurate reporting of allegations,' it nevertheless presented the issue to the trial court.").

## PRIVITY OF CONTRACT

In its first issue, Blue Sky contends the trial court erred in granting K18's summary judgment motion on the ground that there is no privity of contract because it is a "capacity defense" that was not pleaded. In its second issue, Blue Sky argues that privity of contract was not a ground raised in K18's motion for summary judgment. K18 argues that it raised the privity of contract issue in the motion and that Blue Sky waived any argument regarding a lack of pleading by failing to object.

## A. General Legal Principles

"In a breach of contract action, the plaintiff has the burden to prove that the defendant has obligated himself under the contract; the defendant's denial of this element does not constitute an affirmative defense under Rule 92." *Miles v.*

4

*Plumbing Servs. of Hou., Inc.*, 668 S.W.2d 509, 512 (Tex. App.—Houston [14th Dist.] 1984, writ. ref'd n.r.e.) (noting Rule 93(2) refers to mistaken legal capacity); *see also Rodriguez v. USS of Tex., Inc.*, No. 12-06-00398-CV, 2007 WL 2949643, at *3 (Tex. App.—Tyler Oct. 11, 2007, no pet.) (mem. op.) (same); *see also Basic Cap. Mgmt. v. Dynex Com., Inc.*, 348 S.W.3d 894, 899 (Tex. 2011). "Privity is an essential element for recovery in any action based on contract; a breach of contract action normally requires privity between the injured party and the party sought to be held liable." *Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 912–13 (Tex. App.—Dallas 2008, no pet.).

## B.    Analysis

Blue Sky argues that K18 waived its argument that it is not a party to the contract by failing to plead it as an affirmative defense. Blue Sky also contends that "privity of contract" is not mentioned in K18's motion for summary judgment and cannot be a basis for the trial court's judgment. Pleading error is waived if not raised in the trial court prior to judgment. *Godoy v. Wells Fargo Bank, N.A.*, 575 S.W.3d 531, 537 (Tex. 2019) (raising pleading deficiency for the first time in motion for new trial is too late). Blue Sky did not object to the lack of pleading in in its response to K18's motion for summary judgment. Blue Sky first raised the issue in its motion for new trial. As a result, Blue Sky waived any complaint regarding K18's lack of pleading. *See id*.

Addressing Blue Sky's second issue, where the substance of the issue is addressed in the motion for summary judgment, it may be properly asserted on appeal. *See Basic Cap. Mgmt.*, 348 S.W.3d at 899 ("Regardless of whether the issue is properly denominated standing . . . or as capacity, . . . the *substance* of Dynex's assertion—that ART and TCI cannot recover for Dynex's breaches of its agreement because they were not parties to the agreements—was addressed in

5

cross-motions for summary judgment."). In its motion for summary judgment K18 argued that it was "not a party" to the ROE and that it is "fundamental that a contract is not binding on a nonparty." Blue Sky responded arguing that K18 "knew of the existence of the [ROE] between Blue Sky and the apartment community prior to [k18's] purchase of the property in question" so Blue Sky was not unfairly surprised. *See Li*, 631 S.W.3d at 705 ("Indeed, the record indicates that the Association was under no misimpression as to the substance of Li's argument."). Further, there does not appear to be any disagreement that K18 did not sign the ROE. Instead, Blue Sky's contention is that K18 assumed the ROE and is, therefore, liable for breach. Aside from signing the ROE as a party, another way K18 may become "obligated under the contract" is through assignment. This issue is raised by Blue Sky in their fourth issue on appeal and is addressed below.

We conclude that even if K18 was obligated to plead "privity of contract" as a defense, Blue Sky failed to object to the lack of pleading in its response and the issue is not preserved on appeal. We overrule Blue Sky's first issue on appeal. Because we conclude K18 raised a "privity of contract" argument in its motion for summary judgment, we overrule Blue Sky's second issue.

## ASSUMPTION

In its fourth issue, Blue Sky contends that the trial court erred in granting summary judgment because Blue Sky raised a fact issue on whether K18 assumed the ROE. Blue Sky argues that there was a "significant course of dealings" between Blue Sky and K18 sufficient to raise a fact issue on whether K18 assumed the ROE. Appellee contends that because there is no written assumption as provided in the contract, K18 did not assume the contract.

## A. General Legal Principles

"Generally, the assignor of a contract remains liable for the obligations he originally assumed, even after the contract is assigned." *NextEra Retail of Tex., LP v. Inv'rs Warranty of Am., Inc.*, 418 S.W.3d 222, 226 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). "An assignee is not liable under another party's contract without an express or implied assumption of the contract's obligations." *Wagner v. Apache Corp.*, 627 S.W.3d 277, 286 (Tex. 2021) (citing *Jones v. Cooper Indus. Inc.*, 938 S.W.2d 118, 124 (Tex. App.—Houston [14th Dist.] 1996, writ denied)); *see also NextEra Retail of Tex., LP*, 418 S.W.3d at 226. To expressly assume a contract "there must be promissory words or words of assumption on behalf of the assignee." *Id.*; *see also Jones*, 938 S.W.2d at 124. "The mere acceptance of an assignment does not create liability against the accepting party." *Jones*, 938 S.W.2d at 126.

"Implied covenants are not favored, and courts will not lightly imply additional covenants enlarging the terms of a contract." *Id.* at 124. "Implied covenants can be found (1) when the term was so clearly within the contemplation of the parties that they deemed it unnecessary to express it or (2) on equitable grounds." *NextEra Retail of Tex.*, 418 S.W.3d at 227–28. "An implied assumption of obligations may arise 'when the benefit received by the assignee is so entwined with the burden imposed by the assignor's contract that the assignee is estopped from denying assumption and the assignee would otherwise be unjustly enriched.'" *Id.* at 228.

## B. Analysis

It is undisputed that K18 was not a party to any contract with Blue Sky. Instead, Blue Sky argues that K18 is liable because K18 assumed the contract through its course of dealings with Blue Sky, by using Blue Sky's services, and

7

because K18 had knowledge of the contract prior to its purchase of the property from Killeen. However, mere knowledge of the terms of a contract between Blue Sky and Killeen is not enough to imply the terms and obligations to K18. *See Jones*, 938 S.W.2d at 124; *NextEra Retail of Tex.*, 418 S.W.3d at 124.

Blue Sky did not provide any evidence that K18 expressly assumed the contract through actual promissory words, or words of assumption, on the part of K18. *See Jones*, 938 S.W.2d at 124. Blue Sky argues that the facts of this case are like those in *Castle Hills Pharmacy, LLC v. Trial*, No. 14-13-00172-CV, 2014 WL 3587382 (Tex. App.—Houston [14th Dist.] July 22, 2014, pet. denied) (mem. op.). We disagree. In *Castle Hills Pharmacy*, a third party purchased a business subject to an electricity service contract for a term. *Id*. at *1. In the contract for sale, the third party agreed to assume all service agreements and contracts in place. *Id*. After a bench trial, the trial court rendered a judgment against the third party for breach of the electricity service contract. *Id*. at *2. Viewing the evidence in the light most favorable to the judgment, this court concluded that the third party agreed to expressly assume the service contract, had notice of the contract, and operated under the contract. *Id*. at *4.

Here, unlike in *Castle Hills Pharmacy*, Blue Sky has not provided any evidence to show that K18 had any obligation to assume the obligations and liability of the ROE under the contract for sale between K18 and Killeen. Instead, Blue Sky points to the ROE and argues that because the ROE is assignable, that it was assigned to K18. However, this does not fulfill the requirement that the assignee, K18, through actual promissory words, or words of assumption, expressly assume the contract. *See Jones*, 938 S.W.2d at 124. Further, mere acceptance of an assignment does not create liability against the accepting party. *See id.*; *NextEra Retail of Tex.*, 418 S.W.3d at 226. As a result, even if the contract

8

for sale assigned the ROE to K18, because there is no evidence that K18 expressly assumed the obligations under the ROE, there is no express assumption.[5]

We conclude this case is more akin to *NextEra Retail of Texas, LP v. Investors Warranty of America, Inc.* In *NextEra*, another case involving an electricity contract for a term, the electricity provider argued that the third party expressly assumed the contract though an assignment contained in the deed and impliedly assumed the obligations of the service contract because the third party accepted the benefits of the contract for nine months. 418 S.W.3d at 226–27. However, the court concluded that even though a deed included language of acceptance of the assignment of contractual interests of the seller, because there were no "actual promissory words, or words of assumption, on the part of the assignee" the assignee had not expressly assumed the obligations under the contract. *Id*. at 226. Noting that implied covenants are not favored, and although the third party obtained the benefit of lower electricity rates, the court concluded the assignee was not unjustly enriched so as to imply an assumption of the agreement. *Id*. at 228. The court affirmed the summary judgment against the electricity provider. *Id*. at 229.

Here, Blue Sky presented evidence that after the sale it "serviced and provided new installations" and K18 continued to advertise and promote the services on the property for a period of approximately four months. Blue Sky also presented the evidence of the unpaid invoices, though it is undisputed that K18 never paid any of Blue Sky's invoices.[6] However, like in *NextEra*, while Blue Sky

---

[5] While Blue Sky raises this argument as part of its issue four, we note that Blue Sky did not raise this argument as a basis for defeating summary judgment in its response.

[6] For some period after the sale of the property the prior owner continued to pay the Blue Sky invoices.

may have obtained the benefit of lower television provider rates, it was not so unjustly enriched so as to imply an assumption of the ROE. *See id*. at 226–29; *see also Creative Artists Agency, LLC v. Las Palmas Race Park, LLC*, No. 13-14-00015-CV, 2015 WL 6652655, at *6 (Tex. App.—Corpus Christi-Edinburg Oct. 29, 2015, no pet.)(mem. op.) ("[I]t is not enough for appellants to show that Las Palmas performed some of Ramirez's contractual obligations to establish that appellants have conclusively proven that Las Palmas assumed the terms of the Agreement."). Further, Blue Sky has not shown that the benefit received is so entwined with the burden imposed that the assignee is estopped from denying assumption and would otherwise be unjustly enriched. *See NextEra*, 418 S.W.3d at 228; *Jones*, 938 S.W.2d at 125 (where rights under the contract were not destroyed by the transfer of interest and the original contracting party remained liable, the "burdens" of the agreement could not be considered "inextricably entwined with" the benefits so as to justify implying assumption on equitable grounds).

We overrule Blue Sky's fourth issue.

## RESTRICTIVE COVENANT

In Blue Sky's third issue it contends that the ROE is a covenant that runs with the land and is, therefore, binding on K18 as a subsequent owner of the land. Aside from citing the law regarding covenants running with the land, the whole of Blue Sky's argument is that "[i]n this case, the [ROE] touches and concerns the property because it was the clear intent by Blue Sky and the property's previous owner to have that effect." K18 argues that the ROE is a personal covenant and does not run with the land. K18 argues that there is no "privity of estate between Blue Sky and either the prior owner or [K18] . . . nor do the covenants touch and concern the land."

10

## A. General Legal Principles

"To burden lands with personal covenants would be to hamper and impede real estate transactions to the detriment of owners, purchasers and agents." *Blasser v. Cass*, 314 S.W.2d 807, 809 (Tex. 1958). "Parties to a covenant restricting the use of land may always enforce it among themselves under general contract principles." *Reagan Nat'l Advert. of Austin, Inc. v. Cap. Outdoors, Inc.*, 96 S.W.3d 490, 495 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.). "The same is not true of their successors in title." *Id.* A restrictive covenant can bind a successor to the burdened land in two ways: as a covenant that runs with the land at law or as an equitable servitude. *Id.*; *see also Wasson Interests, Ltd. v. Adams*, 405 S.W.3d 971, 973 (Tex. App.—Tyler 2013, no pet.) ("In order for a party to enforce a covenant burdening land against a successor to the party with whom he covenanted, the covenant must run with the land.").

"For a covenant to run with the land, the covenant must be made between parties who are in privity of estate at the time the covenant was made, and must be contained in a grant of land or in a grant of some property interest in the land." *Wasson Interests, Ltd.*, 405 S.W.3d at 973. "Privity of estate between covenanting parties means a mutual or successive relationship exists to the same rights in property." *Id.* (citing *Westland Oil Dev. Corp. v. Gulf Oil*, 637 S.W.2d 903, 910–11 (Tex. 1992)). When a contract is not part of a transaction conveying the land involved, or any easement in it, between the parties, there is no privity of estate. *Id.*

## B. Analysis

The contract between Blue Sky and Killeen does not meet the requirements necessary to make it a covenant running with the land enforceable at law so as to bind Killeen's successors in title. *See Clear Lake Apartments, Inc. v. Clear Lake*

11

*Utils. Co.*, 537 S.W.2d 48, 51 (Tex. App.—Houston [14th Dist.] 1976, modified sub nom. *Clear Lake City Water Auth. v. Clear Lake Utils. Co.*, 549 S.W.2d 385 (Tex. 1977)). Blue Sky does not argue or point to how it and Killeen were in privity of estate at the time the ROE was executed. *See id.* ("Such a covenant must be made between parties who are in privity of estate at the time the covenant is made, and must be contained in the grant of the land or in a grant of some property interest in the land."). Here, Blue Sky argues that the ROE "touches and concerns" the land because that was "clearly" the intent of the parties. However, Blue Sky does not indicate where in the ROE such an intention is manifested and does not argue how specifically the ROE touches and concerns the land. *See URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 764–65 (Tex. 2018) ("[N]o issue regarding the parties' intentions is raised *unless* the [contract] is ambiguous—and evidence of those intentions cannot be used to create an ambiguity." (quoting *Nat'l Union Fire Ins. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 n.5 (Tex. 1995))); *Hamblin v. Lamont*, 433 S.W.3d 51, 54 (Tex. App.—San Antonio 2013, pet. denied) ("Principles of contract law require courts to ascertain and give effect to the intentions of the parties as expressed within the four corners of the agreement.").

The ROE was not made in a grant of land or an easement on the land and Blue Sky does not point to any provision within the ROE to support its argument that it "touches and concerns" the land. *See Hamblin*, 433 S.W.3d at 54. Further, Blue Sky has not pointed us to any analogous case that concludes that a contract for television services for a term has been held to be a covenant running with the land. *See Clear Lake City Water Auth. v. Clear Lake Utils. Co.*, 549 S.W.2d 385 (Tex. 1977) (upholding appellate court's conclusion that contract did not meet technical requirements to run with the land nor an equitable servitude when "[a]t

12

most NCL's promise limited NCL's freedom to contract with other suppliers of water and sewer service. Such a limitation affects the use of land only collaterally"); *Wayne Harwell Props. v. Pan Am. Logistics Ctr., Inc.*, 945 S.W.2d 216, 218 (Tex. App.—San Antonio 1997, writ denied) ("[A]n interest in the cash flow from a piece of land is not so closely linked to the land itself that it constitutes an interest in the land and so satisfies the privity of estate requirement. . . . they are merely personal covenants.").

We overrule Blue Sky's fourth issue.

CONCLUSION

Having overruled each of Blue Sky's issues on appeal, we affirm the judgment of the trial court.


/s/ Ken Wise
                Justice


Panel consists of Justices Wise, Bourliot, and Spain.

13