**David MANDELL, Appellant**

v.

**Jeanne MANDELL, Joyce Field, and Susan Alexander, Independent Co-Executrices of the Estate of Sam Field, Deceased, Appellees.**

**No. 14–06–00031–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 9, 2007.

Joseph J. Hroch and Joel Scott Shields, Houston, for appellant.

Robert S. MacIntyre, David A. Furlow and Kevin R. Pennell, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices FOWLER and EDELMAN.

## OPINION

ADELE HEDGES, Chief Justice.

Appellant, David Mandell, appeals a summary judgment granted in favor of appellees, Jeanne Mandell, Joyce Field, and Susan Alexander, executrices of the Estate of Sam Field ("The Estate"). In five issues, appellant contends the trial court erred in (1) granting appellees' motion for summary judgment, (2) denying his motion for summary judgment, (3) overlooking the finality of the partial summary judgment, (4) awarding attorney's fees to appellees, and (5) denying appellant's right to a jury trial. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1956, William Mandell, David's father, purchased a 15% interest in 240 acres in northwest Houston. In 1966, William purchased the remaining 85% interest in the property and gave a 50% interest to Sam Field, who had lent William the purchase money. In the intervening years, William married Rene Deutser. David Mandell is William and Rene's only child. On August 4, 1972, William shot and killed Rene. William was subsequently convicted of murder without malice and served two years of a two to five year sentence. While his father was incarcerated, David lived with his aunt and uncle, Jeanne and Milton Mandell. Milton was appointed guardian of David's estate.

In 1987, when David reached the age of majority, Milton Mandell, acting in his capacity as guardian, conveyed a 17.5% interest in the 240 acres to David. The 17.5% interest represented David's mother's community interest in the 35% interest William acquired after the marriage. After Sam Field's death, his interest in the property passed to the Estate.

In 1995, David sued William, Jeanne and Milton Mandell, and the Estate for alleged mismanagement of his mother's estate. David hired the law firm of Spencer & Associates ("Spencer") to represent him, and entered into a contingency fee contract in which he agreed to give Spencer 50% of his recovery in the suit. As part of the settlement, David received an additional 7.5% interest in the property, which increased his total interest to 25%. On March 27, 1998, the parties entered into a settlement agreement in which they agreed, among other things, to a preferential purchase right.[1] Specifically, the parties agreed that, "David Mandell and all other owners of the 240 Acre Tract reserve the first right to purchase from the remaining owners the share of that owner at the price offered by any subsequent purchaser."

On November 5, 1998, David executed a general warranty deed transferring 3.75%

---

1. Although appellant attempts to distinguish the terminology, a preferential right of purchase provides no greater rights than a right of first refusal. *See McMillan v. Dooley*, 144 S.W.3d 159, 171 (Tex.App.-Eastland 2004, pet. denied).

of the property to Spencer. In his deposition, David admitted he did not inform William or the Estate about the transaction at that time. On July 19, 1999, Spencer sent a letter to William and the Estate advising that, "As part of the fee agreement for our attorney's fees in the representation of [David], Mr. David Mandell will grant to the firm a portion of his ownership interest in the 240 acre tract of land[.]" On July 30, 1999, William and the Estate wrote a letter rejecting David's attempt to convey the property as part of a fee agreement. The letter stated that William and the Estate considered the conveyance a breach of the settlement agreement. On August 5, 1999, in a letter sent to William, but not the Estate, Spencer informed William that the deed had already been executed. On November 18, 1999, David sent a letter to the Estate stating he did not intend to convey any of his ownership interest, but intended to maintain his 25% interest in the property.

More than three years later, on January 31, 2003, the Estate accepted William's offer to purchase its 50% interest in the property. On February 3, 2003, the general warranty deed, executed in 1998, conveying a 3.75% interest in the property to Spencer was recorded. On March 7, 2003, the Estate sold its interest to William for approximately $10,000 per acre. David subsequently filed this suit alleging that the Estate had breached the settlement agreement by not permitting him an opportunity to purchase the Estate's interest. Both parties filed motions for summary judgment alleging that the other party had breached the agreement as a matter of law. The trial court granted the Estate's motion, and entered a partial summary judgment on January 6, 2006. A hearing on attorney's fees was later held and final judgment was entered granting judgment in favor of the Estate, including attorney's fees.

## STANDARD OF REVIEW

■■■ Under the traditional standard for summary judgment, the movant has the burden to show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). When both parties move for summary judgment, each party "bears the burden of establishing that it is entitled to judgment as a matter of law." *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex.1993). When, as here, a trial court's order granting summary judgment does not specify the grounds relied upon, we must affirm the summary judgment if any of the summary judgment grounds are meritorious. *Oliphint v. Richards*, 167 S.W.3d 513, 515–16 (Tex.App.-Houston [14th Dist.] 2005, pet. denied).

## BREACH OF CONTRACT

In his first and second issues, David contends the trial court erred in granting the Estate's motion for summary judgment and in denying his motion. Both David and the Estate argue that the other party breached the settlement agreement. The Estate argues that by selling a 3.75% interest in the property within months of signing the settlement agreement, David breached the agreement first, thereby excusing the Estate from performance. David argues he did not breach the settlement agreement because (1) the conveyance of the property did not trigger the preferential purchase right, (2) the Estate had notice of the conveyance because it had notice of David's contingent fee agreement with Spencer, and (3) the Estate waived its right of first purchase by failing to timely assert it.

A preferential right of purchase is a right granted to a party giving him or her the first opportunity to purchase property if the owner decides to sell it. *North Central Oil Corp. v. Louisiana Land and Exploration Co.*, 22 S.W.3d 572, 579 (Tex. App.-Houston [1st Dist.] 2000, pet. denied). A preferential purchase right is essentially a dormant option. *A.G.E., Inc. v. Buford*, 105 S.W.3d 667, 673 (Tex.App.-Austin 2003, pet. denied). It requires the property owner, before selling it to another, to offer it to the rightholder on the terms and conditions specified in the contract granting the right. *West Texas Transmission, L.P. v. Enron Corp.*, 907 F.2d 1554, 1561–62 (5th Cir.1990). When a sale is made in breach of the right of first purchase, it therefore creates in the rightholder an enforceable option to acquire the property according to the terms of the sale. *Koch Indus., Inc. v. Sun Co.*, 918 F.2d 1203, 1211 (5th Cir.1990). The option is not perpetual, however, and the rightholder must choose between exercising it or acquiescing in the transfer of the property. *A.G.E.*, 105 S.W.3d at 673.

The summary judgment proof shows that David breached the settlement agreement by selling a portion of his interest in the property without first offering William or the Estate the first right to purchase the property. The record reflects a general warranty deed in which David conveyed a 3.75% interest in the property in exchange for ten dollars "and other good and valuable consideration." The settlement agreement states that the "owners of the 240 Acre Tract reserve the first right to purchase from the remaining owners the share of that owner at the price offered by any subsequent purchaser." By its plain language, the settlement agreement required David to give William and the Estate the right to purchase the 3.75% interest at the same purchase price.

Because David failed to give the other owners this opportunity, he breached the contract. The fact that David now calls the transfer of the property a "conveyance" instead of a "sale" does not change the nature of the transaction. *See A.G.E.*, 105 S.W.3d at 673–74 (conveyance of property in satisfaction of attorney's fees considered a sale that invoked first right of purchase).

### Waiver of Preferential Purchase Right

David argues that even if the conveyance is considered a sale, the Estate waived its preferential purchase right by failing to timely assert it. David contends that the Estate knew of the terms of his agreement with Spencer and was obligated to assert its right at that time. The only summary judgment proof regarding David's contingent fee agreement was his deposition testimony in the 1995 lawsuit and his affidavit in support of summary judgment stating that he agreed to give his attorneys 50% of his recovery in the lawsuit. In his deposition, David testified that he had a written agreement with his attorneys, but did not produce it based on his counsel's advice.

David argues that his testimony concerning his contingent fee agreement put the Estate on notice that he intended to sell a portion of his interest in the property. When a property owner expresses his or her intention to sell the property the holder of a right of preferential purchase is obligated to elect to either purchase the property or permit the property owner to sell it. *A.G.E.*, 105 S.W.3d at 673; *Martin v. Lott*, 482 S.W.2d 917, 922 (Tex.Civ.App.-Dallas 1972, no writ). By informing the Estate of his contingent fee agreement, David did not express an intention to sell a portion of the property. The only intention expressed by David was that he would pay his attorneys 50% of his

recovery in the lawsuit. The Estate was not put on notice that David intended to sell the property.

█ For the first time on appeal, David argues that the conveyance of the property occurred prior to his agreement to the preferential purchase right because Spencer's interest in the property "vested" at the time the agreement was signed. David waived this argument by failing to raise it in the trial court. *See McConnell v. Southside Ind. School Dist.*, 858 S.W.2d 337, 341 (Tex.1993) (issues a non-movant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion).

█ Finally, David argues that the Estate received notice of the conveyance in the July 19, 1999 letter, but waived its preferential purchase right by failing to timely assert it. Acquiescence in a sale that violates one's preferential purchase right constitutes conduct inconsistent with an intention to purchase. *Koch Indus.*, 918 F.2d at 1212. Here, the Estate did not acquiesce in the conveyance to Spencer. Upon receipt of the letter notifying it of the potential sale, the Estate rejected the proposed sale and informed David it would treat the proposed conveyance as a breach of the agreement. Several months later, the Estate received a letter from David stating he did not intend to sell any of his interest in the property. Therefore, the Estate had no notice of the conveyance until it was recorded on February 3, 2003, three days after the acceptance of William's offer to purchase the Estate's interest in the property. Therefore, the Estate did not waive its preferential purchase right by acquiescing in the conveyance.

*Conclusion*

█ David breached the preferential purchase right in 1998 when he conveyed an interest in the property without permitting the Estate or William the opportunity to purchase that interest. The Estate breached the agreement when it conveyed its interest to William in 2003. When one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance. *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex.2004). Therefore, David's prior breach excused the Estate's breach. Further, a party who has breached a contract cannot then maintain a suit for the subsequent breach by another party. *Id.* at 198; *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex.1990). Because David breached the settlement agreement by conveying the property to his attorney, he cannot maintain a suit against the Estate for breach of the same provision. The trial court correctly granted the Estate's motion for summary judgment, and denied David's competing motion. David's first and second issues are overruled.

### FINALITY OF JUDGMENT

█ In his third issue, David contends that the trial court erred in overlooking the finality of the January 6, 2006, judgment. On January 6, 2006, the trial court granted partial summary judgment in favor of the Estate. A summary judgment that does not dispose of all the parties or issues is interlocutory. *Schlipf v. Exxon Corp.* 644 S.W.2d 453, 454 (Tex. 1982). The judgment entered on January 6, 2006, disposed of the breach of contract and declaratory judgment issues.[2] In addition to relief on the breach of contract and declaratory judgment issues, the Estate sought to recover its attorney's fees.

---

2. The summary judgment order contained no "Mother Hubbard" language.

The summary judgment did not become final and appealable until January 23, 2006, when the trial court entered judgment on the breach of contract and the Estate's attorney's fees. *See McNally v. Guevara,* 52 S.W.3d 195, 196 (Tex.2001) (holding summary judgment order was not a final judgment because it did not dispose of the defendants' claim for attorney's fees). David's third issue is overruled.

## ATTORNEY'S FEES

In his fourth issue, David contends the trial court erred in awarding attorney's fees because (1) the Estate is not entitled to attorney's fees under the Declaratory Judgments Act; and (2) evidence submitted in support of attorney's fees should have been excluded.

### *Declaratory Judgments Act*

 Under the Declaratory Judgments Act, the trial court has discretion to award attorney's fees subject to certain requirements. *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998); TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. The award of attorney's fees is not limited to the plaintiff or the party affirmatively seeking declaratory relief. *Knighton v. IBM Corp.,* 856 S.W.2d 206, 210 (Tex.App.-Houston [1st Dist.] 1993, writ denied).

 The Declaratory Judgments Act entrusts attorney's fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law. *Bocquet,* 972 S.W.2d at 21. In reviewing an attorney's fee award under the Act, we review the evidence for factual sufficiency. *Id.* In considering whether attorney's fees are reasonable and necessary, we are guided by the non-exhaustive list of factors set forth in disciplinary rule 1.04. *See id.* Those factors include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04, reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Texas State Bar R. art. X, § 9).

 Robert MacIntyre, the Estate's attorney, testified that the Estate had incurred fees of $108,354.53 up to the time of trial, and fees of approximately $30,000 since January 1, 2006. With regard to the first factor, MacIntyre testified that his firm spent seven to eight months responding to a claim in excess of one million dollars. MacIntyre also testified that he was deprived of employment on other cases due to the resources required to respond to David's suit. He further testified that his fees were consistent with those charged in Harris County. With regard to the sixth and seventh factors, MacIntyre testified that he had a long

standing relationship with the Estate and that he had thirty-three years' experience as the administrator and representative of similar estates. With regard to the eighth factor, MacIntyre testified that his fee was a fixed fee not dependent on the outcome of the case.

■ David contends, for the first time on appeal, that because his claim for declaratory relief mirrored his breach of contract claim, the Estate cannot recover attorney's fees under the Declaratory Judgments Act. *See Adams v. First Nat'l Bank of Bells/Savoy,* 154 S.W.3d 859, 873 (Tex.App.-Dallas 2005, no pet.) (When a party brings a declaratory judgment action that mirrors relief sought by the original claim, attorney's fees cannot be recovered under the Declaratory Judgments Act). As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion. Tex.R.App. P. 33.1(a). By failing to raise this issue in the trial court, David waived error. *See Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Utility Dist.,* 198 S.W.3d 300, 318 (Tex. App.-Texarkana 2006, pet. filed) (identical "mirror image" argument waived when not raised in the trial court).

### Evidentiary Issues

■ David next complains that the trial court abused its discretion in admitting evidence of the Estate's attorney's fees because the Estate failed to produce the documents relied on in seeking attorney's fees. An appellate court reviews a complaint regarding the admission or exclusion of evidence under an abuse of discretion standard. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995).

On August 1, 2005, David requested disclosure of all items required by Rule 194.2 of the Texas Rules of Civil Procedure.

Under Rule 194.2(f), the Estate was required to disclose any documents relied on by a testifying expert. At the time of its initial response, the Estate stated that it would supplement with any required documents for testifying experts. Following the trial court's ruling on January 6, 2006, the Estate's counsel contacted David's counsel and asked whether David intended to try the issue of attorney's fees to a jury. The Estate's counsel further stated that he assumed David would want copies of the attorney's billing statements and that the Estate was in the process of assembling that information. David's counsel responded by continuing to insist that the January 6, 2006, order was a final judgment, and that "any attempts by [the Estate's counsel] or the court to conduct a pre-trial conference or evidentiary hearing will be construed as an ex parte communication in violation of State Bar Rules." At 4:41 p.m., January 20, 2006, the Friday before the hearing on attorney's fees was set to take place on Monday, January 23, 2006, David filed a motion to exclude any expert testimony regarding attorney's fees due to discovery violations.

David waived any complaint about the Estate's failure to supplement discovery responses by first refusing the Estate's offer of the documents. The Estate attempted to supplement its discovery responses, but David refused to accept any discovery, and informed the Estate that any hearing it attempted to hold would be considered an ex parte communication. Second, David failed to obtain a ruling compelling discovery prior to the start of trial. *See Remington Arms Co. v. Caldwell,* 850 S.W.2d 167, 170 (Tex.1993) ("the failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct."). David did not file a motion to

exclude expert testimony until this court denied his attempt to delay the hearing. By waiting until the eve of trial to file his motion, David waived his complaint on the exclusion of evidence.

■ David further complains of the trial court's failure to exclude lay testimony on attorney's fees. Jeanne Mandell, one of the executrices of the Estate, and Laura Charleson, a former employee of Sam Field, testified that at the time of trial, the Estate had paid $108,354.53 in attorney's fees to defend David's suit. David objected to the testimony on the grounds of irrelevancy and hearsay. On appeal, David contends the evidence should have been excluded and that the lay testimony cannot support an award of attorney's fees. Even if the lay testimony could not support an award of fees, MacIntyre's testimony was factually sufficient to support the trial court's award of attorney's fees. Therefore, the trial court's admission of Mandell's and Charleson's testimony was not harmful. David's fourth issue is overruled.

## JURY TRIAL

■ In his fifth issue, David contends the trial court erred in denying his request for a jury trial. At the time David filed his original petition, he requested a jury trial and paid the jury fee. After granting the Estate's motion for summary judgment, the trial court asked the following questions:

THE COURT: If you would all agree to it and approve it as to form. Does this leave anything to try in three weeks?

MR. MACINTYRE [The Estate's counsel]: Our attorney's fees.

THE COURT: Do you want a jury trial on that?

MR. MACINTYRE: No, sir.

THE COURT: Good. I don't either. When is that set?

\* \* \* \* \* \*

THE COURT: That's all right. So we will go ahead and do the trial on the 23rd just on the attorney's fees, unless you can work something out.

MR. MACINTYRE: Yes, sir.

THE COURT: All right. Thank ya'll.

MR. HROCH [David's counsel]: May we be dismissed?

THE COURT: Yes.

Following the hearing, on January 11, 2006, the Estate's counsel wrote to David's counsel stating, "First, you have requested a jury and paid a jury fee. At the hearing last Friday, you were silent when Judge Wood raised the matter of using a jury. Is it your intent to try the attorney's fees issue to a jury?" David's response to the Estate's question about a jury trial was the same as his response to the Estate's offer to produce billing records. David chose to treat the January 6, 2006, judgment as final and refused to participate in any proceeding concerning attorney's fees. Not until this court denied David's eleventh hour attempt to delay the hearing on attorney's fees did David file his objection to the court's removal of the case from the jury docket.

■ The Estate contends that David failed to timely object to the removal of the case from the jury docket and thereby waived his right to a jury trial. *See In re J.N.F.*, 116 S.W.3d 426, 434–35 (Tex.App.-Houston [14th Dist.] 2003, no pet.). Waiver requires either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *In re General Electric Cap. Corp.*, 203 S.W.3d 314, 316 (Tex.2006). For a court to determine if waiver has occurred, it must examine the acts, words, or conduct of the parties. *Robinson v.*

*Robinson,* 961 S.W.2d 292, 299 (Tex.App.-Houston [1st Dist.] 1997, no writ).

Through his actions at the summary judgment hearing, and his correspondence with counsel after the hearing, David waived a jury trial on the issue of attorney's fees. The trial court specifically asked if the Estate wanted a jury trial on the issue of attorney's fees. When the Estate's counsel stated he did not want a jury trial, David did not assert his right to a jury trial. Further, the Estate again questioned David about his right to a jury trial. David chose to treat the partial summary judgment as a final judgment and the hearing on attorney's fees as an "ex parte communication." Having made that choice, David intentionally waived his right to a jury trial on the issue of attorney's fees. David's fifth issue is overruled.

The judgment of the trial court is affirmed.