NO. 07-09-00095-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



MAY
21, 2010

 



 

CECIL HICKS, APPELLANT

 

v.

 

TIM CASTILLE, APPELLEE 



 



 

 FROM THE 31ST DISTRICT COURT OF WHEELER
COUNTY;

 

NO. 12,172; HONORABLE STEVEN RAY EMMERT, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

OPINION

 

 

            Appellee’s Motion for En Banc
Reconsideration is denied.  We withdraw
our opinion and judgment of April 12, 2010, and substitute the following.  

 

Cecil Hicks appeals from the trial
court’s summary judgment in favor of Tim Castille.  At issue is the precise nature of Castille’s
right of first refusal as to certain property. 
The trial court held that Castille has a contractual right to purchase
an entire four-acre tract intact, rather than just a fraction of the tract, if
he has the opportunity to exercise his right of first refusal.  The trial court also concluded that Castille
has a contractual right to the benefits of the tower lease in effect on the
four-acre tract and that Hicks’s contemplated sale of approximately .28 acre
and cancellation of the tower lease for $50,000.00 would constitute a material
breach of the parties’ agreement.  Hicks
complains that the trial court erred by so concluding and contends that he was
entitled to summary judgment that he complied with the terms of their agreement
by giving Castille notice of the terms of the contemplated sale of the .28
acre. 

            We
reverse, render in part, and remand in part.

Factual and
Procedural History

            Castille purchased from Hicks
ninety-six acres of a 100-acre tract of land in Wheeler County.  The remaining four acres included a parcel of
approximately .28 acre subject to a lease agreement between American Tower,
L.P. and Hicks.  Castille and Hicks
agreed that Castille would hold a right of first refusal as to the four acres
(the Agreement).  The Agreement provides
as follows:

For and in consideration of the sum of TEN AND NO/100 ($10.00) DOLLARS,
the purchase of certain real estate located in Wheeler County, Texas, owned by
CECIL HICKS, hereinafter referred to as “Hicks,” by TIM CASTILLE, hereinafter
referred to as “Castille,” that the said Hicks gives Castille the right of
first refusal to purchase a four (4) acre tract of land and the American Tower
Lease currently in effect on said land, said four acres more fully described by
metes and bounds on Exhibit “A” attached hereto and incorporated herein for all
purposes.

Such right of first refusal shall be exercised within sixty (60) days
of receipt of written notice via certified mail, return receipt requested, from
Hicks to Castille, that Hicks no longer desires to use such real estate or
desires to sell same.  In the event
Castille does not exercise the right to purchase within sixty (60) days, this
right of first refusal shall terminate and be of no further force and effect.

DATED this 30 day of May, 2006.

Both Hicks and Castille signed the
Agreement.  The issue in this case
centers on whether the Agreement would permit the sale of the .28 acre subject
to the lease or whether the four-acre tract must remain intact.

            The
parties agree that, on April 21, 2008, Hicks sent Castille a notice of intent
to sell a .28-acre tract included in the four-acre tract on which Castille held
a right of first refusal.  According to
Hicks, Castille then had sixty days to exercise his then-matured option to
purchase the .28 tract on the same terms to which American Tower and Hicks had
agreed:  $50,000.00.  Castille did not exercise his option to
purchase the .28 acre.  Instead, on June
18, 2008, he filed suit for declaratory relief. 
On competing motions for summary judgment, the trial court granted
Castille’s motion, denied Hicks’s motion, and awarded Castille $5,200.00 in
attorney’s fees.

Standard of Review

            By
twelve issues, Hicks contends that the trial court erroneously granted
Castille’s motion for summary judgment and erroneously denied his motion for
summary judgment.  Both parties' motions
sought summary judgments that would declare the parties' rights under the
agreement, and each party requested attorney’s fees.

            We
look to the procedure used to resolve the issue below to determine the standard
of review on appeal.  City of
Galveston v. Tex. Gen. Land Office, 196 S.W.3d 218, 221 (Tex.App.—Houston
[1st Dist.] 2006, pet. denied).  When a
trial court resolves a declaratory judgment action on competing motions for
summary judgment, "we review the propriety of the declaratory judgment
under the same standards that we apply in reviewing a summary
judgment."  Id.

            We
review a trial court's decision to grant or to deny a motion for summary
judgment de novo.  See Tex.
Mun. Power Agency v. Pub. Util. Comm'n of Tex., 253 S.W.3d 184, 192 (Tex.
2007).  Although the denial of summary
judgment is ordinarily not appealable, we may review such a denial when both
parties moved for summary judgment and the trial court granted one and denied
the other.  Id.  When reviewing competing motions for summary
judgment, we review the summary judgment evidence presented by each party, determine
all questions presented, and render the judgment that the trial court should
have rendered.  Id.; FWT, Inc.
v. Haskin Wallace Mason Prop. Mgmt., L.L.P., 301 S.W.3d 787, 792
(Tex.App.—Fort Worth 2009, pet. filed).

Analysis

A.        Rules
of Construction

            The
trial court’s judgment adopted Castille’s construction of the Agreement.  Castille reads the Agreement as allowing
Hicks to sell the four-acre tract subject to the right of first refusal only as
one entire parcel.[1]  In other words, he reads the Agreement as one
which would prohibit Hicks from selling a portion, rather than the entirety, of
the four-acre tract.  Hicks, on the other
hand, reads the Agreement without such restriction and maintains that the
Agreement permits such a sale of a portion of the four-acre tract so long as he
notifies Castille in accordance with the terms of the Agreement.

            In
construing a written contract, our primary concerns are to ascertain and to
give effect to the parties' intentions as expressed in the document.  Frost Nat'l Bank v. L&F Distribs.,
Ltd., 165 S.W.3d 310, 311–12 (Tex. 2005). 
In doing so, we consider the entire writing and attempt to harmonize and
give effect to all of the provisions of the contract by analyzing the provisions
with reference to the whole agreement.  Id.
at 312.  We do not give any single
provision controlling effect.  J.M.
Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003).  We construe a contract “from a utilitarian
standpoint bearing in mind the particular business activity sought to be
served” and “will avoid[,] when possible and proper[,] a construction which is
unreasonable, inequitable, and oppressive.” 
Frost Nat'l Bank, 165 S.W.3d at 312 (quoting Reilly v. Rangers
Mgmt., Inc., 727 S.W.2d 527, 530 (Tex. 1987)).  If, after we apply the relevant rules of
construction, we can give a contract a definite or certain legal meaning, the
contract is unambiguous, and we construe it as a matter of law.  Id. 
A contract is not ambiguous simply because the parties disagree over its
interpretation.[2]  Markert v. Williams, 874 S.W.2d 353,
355 (Tex.App.—Houston [1st Dist.] 1994, writ denied).  If a contract may be construed in two ways,
one of which validates the contract and the other of which invalidates it, we must
adopt the construction that validates the contract.  Harris v. Rowe, 593 S.W.2d 303, 306
(Tex. 1980); Hackberry Creek Country Club, Inc. v. Hackberry Creek Home
Owners Ass'n, 205 S.W.3d 46, 56 (Tex.App.—Dallas 2006, pet. denied).

B.        Rights
of First Refusal   

            1.         What a holder of a right of first
refusal can do

            A
right of first refusal, also called a preferential right or a preemptive right,
is a right granted to a party giving him or her the first opportunity to
purchase property if an owner decides to sell it.  Mandell v. Mandell, 214 S.W.3d 682,
688 (Tex.App.—Houston [14th Dist.] 2007, no pet.); Abraham Inv. Co. v. Payne
Ranch, Inc., 968 S.W.2d 518, 524 (Tex.App.—Amarillo 1998, pet.
denied).  Sister courts have described a
preferential right as a dormant option.  Mandell,
214 S.W.3d at 688; A.G.E., Inc. v. Buford, 105 S.W.3d 667, 673
(Tex.App.—Austin 2003, pet. denied).  A
right of first refusal is generally well understood in the business world to
mean that the rightholder must be given an opportunity to purchase the property
from the property owner on the terms offered by any third party.  Abraham Inv. Co., 968 S.W.2d at
524.  

            Once
the property owner provides the terms of that third-party offer to the
rightholder, the rightholder then has the power to accept or reject the
offer.  City of Brownsville v. Golden
Spread Elec. Coop., Inc., 192 S.W.3d 876, 880 (Tex.App.—Dallas 2006, pet.
denied); Abraham Inv. Co., 968 S.W.2d at 524.  Indeed, when a property owner expresses the
intention to sell the property, the rightholder is obligated to elect to either
purchase the property or permit the property owner to sell it.  Mandell, 214 S.W.3d at 688; A.G.E.,
105 S.W.3d at 673.  So, generally, when
the property owner gives notice of his intent to sell, the preferential right
matures or "ripens" into an enforceable option.  Golden Spread Elec. Coop., 192 S.W.3d
at 880; Abraham Inv. Co., 968 S.W.2d at 524.  The terms of the option are formed by both
the provisions granting the preferential right and the terms and conditions of
the third-party offer presented to the rightholder.  Abraham Inv. Co., 968 S.W.2d at
524–25.

            The
rightholder's exercise of the option to purchase must be positive,
unconditional, and unequivocal.  Tex.
State Optical, Inc. v. Wiggins, 882 S.W.2d 8, 10–11 (Tex.App.—Houston [1st
Dist.] 1994, no writ).  If the
rightholder proposes a new demand, condition, or modification of the terms, he
is treated as having rejected the offer. 
See Golden Spread Elec. Coop., 192 S.W.3d at 880; Tex.
State Optical, 882 S.W.2d at 11. 
When the rightholder notifies the property owner of his or her
acceptance of the offer, a contract between the rightholder and the property
owner is created. Golden Spread Elec. Coop., 192 S.W.3d at 880.

            2.         What the holder of a right of first
refusal cannot do

            Though
a right of first refusal may mature into an option, it remains distinct from an
option in that the holder of the option purchases the right to compel a sale of
property on the stated terms before the expiration of the option.  See Comeaux v. Suderman, 93
S.W.3d 215, 219–20 (Tex.App.—Houston [14th Dist.] 2002, no pet.); see also
Sinclair Ref. Co. v. Allbritton, 147 Tex. 468, 475, 218 S.W.2d 185, 188–89
(Tex. 1949).  The holder of a right of
first refusal has no right to compel a sale or to prevent a sale; he or she has
only the right to be offered the property at a fixed price or at a price
offered by a bona fide purchaser if and when the owner decides to sell.  Abraham Inv. Co., 968 S.W.2d at 525; Riley
v. Campeau Homes, Inc., 808 S.W.2d 184, 187 (Tex.App.—Houston [14th Dist.]
1991, writ dism'd).  The holder of a
right of first refusal cannot compel an unwilling owner to convey the
property.  Riley, 808 S.W.2d at
187.

            Unless
the property owner and the rightholder have agreed to terms on price, the
rightholder cannot fix the price because the price is determinable only when a
willing seller receives an acceptable offer from a bona fide purchaser. See
Forderhause v. Cherokee Water Co., 623 S.W.2d 435, 439
(Tex.Civ.App.—Texarkana 1981), rev'd on other grounds, 641 S.W.2d 522
(Tex. 1982).  The rightholder does not
have the privilege to negotiate with the seller regarding the terms of the
third-party offer.  See Abraham
Inv. Co., 968 S.W.2d at 525.  The
owner of property subject to a right of first refusal remains the master of the
conditions under which he or she will relinquish interest in the property so
long as those conditions are commercially reasonable, imposed in good faith,
and not specifically designed to defeat the right of first refusal.[3]  See McMillan v. Dooley, 144
S.W.3d 159, 176 (Tex.App.—Eastland 2004, pet. denied) (quoting W. Tex.
Transmission, L.P. v. Enron Corp., 907 F.2d 1554, 1563 (5th Cir. 1990)).

 

C.        Construing
the Agreement

            Having
reviewed the rules we must employ to construe agreements in general and the
general principles concerning rights of first refusal, we now examine the
Agreement between Hicks and Castille.

            We
begin by observing that alienability is a legal incident of property, and
restraints against it are generally contrary to public policy.  See Trustees of Casa View Assembly
of God Church v. Williams, 414 S.W.2d 697, 702 (Tex.Civ.App.—Austin 1967,
no writ).  The right of alienation is an
inherent and inseparable quality of an estate in fee simple.  Potter v. Couch, 141 U.S. 296, 315 11
S.Ct. 1005, 35 L.Ed. 721 (1890); Williams v. Williams, 73 S.W.3d 376,
379 (Tex.App.—Houston [1st Dist.] 2002, no pet.).  A restraint on alienation is “an attempt by
an otherwise effective conveyance or contract to cause a later conveyance . . .
to impose contractual liability on the one who makes the later conveyance when
such liability results from a breach of an agreement not to convey; or . . . to
terminate or subject to termination all or part of the property interest
conveyed.”  Navasota Res., L.P. v.
First Source Tex., Inc., 249 S.W.3d 526, 537-538 (Tex.App.—Waco 2008, pet.
denied) (adopting, as have other Texas courts, the Restatement’s definition of
restraint on alienation and quoting Restatement
of Property § 404(1)(b), (c)).[4]  “A restriction . . . not forbidding
alienation to particular persons or for particular purposes only, but against
any and all alienation whatever during a limited time, of an estate in fee, is
likewise void, as repugnant to the estate devised to the first taker, by
depriving him during that time of the inherent power of alienation.”  Williams, 73 S.W.3d at 379–80 (quoting
Potter, 141 U.S. at 315); see also O'Connor v. Thetford,
174 S.W. 680, 681, 682 (Tex.Civ.App.—San Antonio 1915, writ ref’d) (observing
that “[h]e would certainly be a poor owner who was required to hold property
all his life without the power to sell it”).

            Were
we to adopt Castille’s construction of the Agreement, we would be enforcing what
appears to be an unreasonable restraint on alienation: an outright prohibition
of indeterminate duration from selling any portion of the land in question less
than four acres.  See Reagan
Nat'l Adver. of Austin v. Capital Outdoors, 96 S.W.3d 490, 494–95
(Tex.App.—Austin 2002, pet. granted, judgmn’t vacated w.r.m.) (concluding that
“appellant’s construction of the lease clause is too broad and would create an
unreasonable restraint on alienation were we to adopt it”).

            Castille
has not directed this Court to a case which would support the position that a
landowner may not partition or sell portions of the property described in an
agreement conferring a right of first refusal.[5]  And we have found but one that briefly
addresses this issue; it, however, does so in a slightly different context and
supports the position contrary to Castille’s. 
See Barrows v. Ezer, 668 S.W.2d 854, 855 (Tex.App.—Houston
[14th Dist.] 1984, writ ref’d n.r.e.). 
At issue in Barrows was the enforceability of a provision in a
will that required the devisees to keep the bequeathed ranch intact for
twenty-five years and also maintain the name of the ranch and make certain that
the livestock on the ranch bore the testator’s recorded brand for twenty-five
years.  Id.  The appellate court affirmed the trial
court’s conclusion that this attempted restraint on alienation was void.  Id. at 856.  Of course, the will provision in Barrows
attempted to do more than simply keep the ranch intact, but the case remains
instructive in its treatment of the restraint on alienation as it relates to an
attempt to prohibit a transfer of a portion of the land at issue.

            Similarly,
here, the Agreement, as Castille would have us read it, would serve to wholly
prohibit Hicks – regardless of his compliance with the notice requirements –
from selling .28 acre, one acre, two acres, or any portion of the land less
than four acres.  This construction,
then, would amount to a nearly absolute prohibition against conveying any of the
land less than four acres, and we have no concrete indication of the duration
from which we could determine whether it is reasonable.[6]  Such a restraint on alienation of property
has long been disfavored.  

            Although
the Agreement does refer to “the four-acre tract,” it does not specifically
provide that the right of first refusal is limited to only the four-acre tract
intact.  The parties could have
negotiated more specific terms but did not do so.  We will not read terms into the Agreement,
especially not when those terms would lead to an unreasonable
construction.  

            Adhering
to the relevant rules of construction, we have examined the Agreement from a
utilitarian perspective, bearing in mind the purposes and restrictions
associated with a right of first refusal, and have construed the Agreement in
such a way as to not invalidate it.  See
Frost Nat'l Bank, 165 S.W.3d at 312; Hackberry Creek Country Club,
205 S.W.3d at 56.  Having done so, we
conclude that the Agreement permits the sale of a portion of the four acres so
long as Hicks gives proper notice in accordance with the Agreement.  To hold otherwise would cause the right of
first refusal to represent an unreasonable restraint on alienation by
prohibiting Hicks from selling any portion of the tract less than four
acres.  The converse application would
also be unreasonable, permitting the right of refusal to do something it must
not do; to hold that Castille has a right to buy all four remaining acres
intact would run afoul of the well-established rule that a holder of a right of
first refusal cannot compel the owner to sell the property at issue.  That is, to read the Agreement to mean that
Hicks can only sell the entire four-acre tract of land could have the practical
effect of forcing him to sell land that he does not wish to sell.  We will not construe the Agreement to create
a right of first refusal that is inconsistent with the principles concerning
such rights.

 

Conclusion

            In
order to conclude, as did the trial court, that the contemplated sale from
Hicks to American Tower constituted a breach of the Agreement, one must read
the Agreement as permitting sale of only
the four-acre tract in its entirety. 
This all-or-nothing construction is problematic; either it disallows
Hicks to sell a portion of his property infringing on his ownership of the
property or it compels him to sell the land in its entirety which may be and,
in this instance, is more than he desired to sell.[7]               

            The
trial court erred by concluding that Castille has a contractual right to
purchase the entire four-acre tract intact, that Castille also had a
contractual right to the tower lease benefits, and that the contemplated sale
between Hicks and American Tower would represent a material breach of the
Agreement.  Application of the rules of
construction lead us to conclude that the Agreement permitted the sale of a
portion of the four acres so long as Hicks gave proper notice and the
third-party offer was commercially reasonable, imposed in good faith, and not
specifically designed to defeat the right of first refusal.   Since the parties agree that Hicks gave
proper notice and that Castille did nothing to exercise his then-matured option
to purchase the .28 acre and since there is no evidence before this Court to
indicate that the terms of the sale between Hicks and American Tower were
commercially unreasonable, not imposed in good faith, or specifically designed
to defeat Castille’s right of first refusal, we render the judgment that the
trial court should have rendered:  The
evidence establishes that Hicks gave the requisite notice of his intent to sell
.28 acre of the four acres and provided the terms on which he contemplated
selling to American Tower; that, upon such notice, Castille’s right of first
refusal as to the .28 acre matured into an option to purchase the .28 acre on
those terms; that Castille failed to exercise such option; and that, due to
such failure, Castille’s right to purchase the .28 acre expired.

            Because
we so hold, we reverse the trial court's summary judgment in favor of Castille
and render judgment in favor of Hicks that Castille’s right of first refusal
was invoked and, having remained unexercised, lapsed as to the .28 acre.  We also reverse the trial court’s award of
attorney’s fees to Castille and remand the cause to the trial court to
reconsider the equitable and just award of reasonable and necessary attorney’s
fees.  See Tex. Civ. Prac. & Rem. Code Ann.  § 37.009 (Vernon 2008); Nw. Austin Mun.
Util. Dist. No. 1 v. City of Austin, 274 S.W.3d 820, 840 (Tex.App.—Austin
2008, pet. denied).

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

 

 

 

 

            








 











[1] Alternatively, Castille argues that the terms of the
contemplated sale of the .28 acre from Hicks to American Tower for $50,000.00
was not commercially reasonable.  We have
no evidence before us that the terms of the contemplated sale were
unreasonable.  Assuming we may consider
Castille’s affidavit for the proposition that the terms of the sale were
commercially unreasonable, we conclude that his general statements regarding
the fair market value per acre of farm land (specifically excluding conveyance
of mineral rights) in Wheeler County do not directly address the price per acre
on which improvements have been made. 
That is to say, to the extent Castille’s affidavit can be considered, it
is not relevant to the fair market value of land in Wheeler County on which a
tower structure has been erected.  

 

 





[2] We add that a party may not introduce parol evidence
to vary the terms of an unambiguous contract. 
Markert, 874 S.W.2d at 355. 
For this reason, we do not consider the contents of Castille’s affidavit
concerning the negotiations surrounding the Agreement.  Even were we to consider the affidavit,
Castille’s intentions do not change the unambiguous terms of the written right
of first refusal.  





[3] Castille points to no evidence that the contemplated
sale was specifically designed to defeat his rights to the tower lease.  Though the sale may have ultimately done so,
to the extent the Agreement conferred any rights to the lease to Castille, we
have no evidence that the contemplated sale was designed with that specific
purpose in mind.  Since he was not a
party to the lease between Hicks and American Tower, Castille could not have
agreed to the termination of the lease. 
Had Castille exercised the option to purchase when it matured, he may
have then been in a position to negotiate with American Tower regarding the
status of the lease.





[4] See Procter v. Foxmeyer Drug Co., 884
S.W.2d 853, 858–59 (Tex.App.—Dallas 1994, no writ) (providing a thorough
discussion of the applicability of the Restatement (Second) to restraints on
alienation in the commercial transaction context as opposed to the donative
transfer context); see also Sonny Arnold, Inc. v. Sentry Sav. Ass'n,
633 S.W.2d 811, 814 (Tex. 1982); Mattern v. Herzog, 367 S.W.2d 312, 319
(Tex. 1963); Deviney v. Nationsbank, 993 S.W.2d 443, 449 (Tex. App.—Waco
1999, pet. denied); Randolph v. Terrell, 768 S.W.2d 736, 738–39 (Tex.
App.—Tyler 1987, writ denied). 





[5] We note the distinction between the instant case and
the situations examined in such cases as FWT, Inc., 301 S.W.3d at
792–93, McMillan, 144 S.W.3d at 178–79, and Riley, 808 S.W.2d at
189.  In these cases, the terms of the
contemplated sale went beyond the scope of the right of first refusal.  As a general rule, the holder of a
preferential right cannot be compelled to purchase assets beyond those included
within the scope of the agreement subject to the preferential right in order to
exercise that right.   See Navasota
Res., 249 S.W.3d at 535.  Unlike the
rightholders in these cases, Castille is not faced with an offer that goes
beyond the scope of the agreement.  To
the contrary, American Tower offered to purchase from Hicks only .28 acre of
the four acres on which Castille holds a right of first refusal.





[6] O’Connor and
a number of other cases suggest that even restrictions that amount to an
outright prohibition of transfer may be valid if those restrictions are of reasonable
duration.  174 S.W. at 681.  Here, there is no express duration of the
Agreement.





[7] Taken to its logical conclusion, Castille’s construction
of the agreement that Hicks must sell the four-acre parcel in its entirety and with the tower lease in effect would
vest in Castille the power to force Hicks and American Tower to remain in the
lease agreement.  We will not read a
contract in such a way as to lead to an absurd result.