NO. 07-09-00095-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 21, 2010

CECIL HICKS, APPELLANT

v.

TIM CASTILLE, APPELLEE

FROM THE 31ST DISTRICT COURT OF WHEELER COUNTY;

NO. 12,172; HONORABLE STEVEN RAY EMMERT, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellee's Motion for En Banc Reconsideration is denied. We withdraw our opinion and judgment of April 12, 2010, and substitute the following.

Cecil Hicks appeals from the trial court's summary judgment in favor of Tim Castille. At issue is the precise nature of Castille's right of first refusal as to certain property. The trial court held that Castille has a contractual right to purchase an entire four-acre tract intact, rather than just a fraction of the tract, if he has the opportunity to exercise his right of first refusal. The trial court also concluded that Castille has a

contractual right to the benefits of the tower lease in effect on the four-acre tract and that Hicks's contemplated sale of approximately .28 acre and cancellation of the tower lease for $50,000.00 would constitute a material breach of the parties' agreement. Hicks complains that the trial court erred by so concluding and contends that he was entitled to summary judgment that he complied with the terms of their agreement by giving Castille notice of the terms of the contemplated sale of the .28 acre.

We reverse, render in part, and remand in part.

Factual and Procedural History

Castille purchased from Hicks ninety-six acres of a 100-acre tract of land in Wheeler County. The remaining four acres included a parcel of approximately .28 acre subject to a lease agreement between American Tower, L.P. and Hicks. Castille and Hicks agreed that Castille would hold a right of first refusal as to the four acres (the Agreement). The Agreement provides as follows:

> For and in consideration of the sum of TEN AND NO/100 ($10.00) DOLLARS, the purchase of certain real estate located in Wheeler County, Texas, owned by CECIL HICKS, hereinafter referred to as "Hicks," by TIM CASTILLE, hereinafter referred to as "Castille," that the said Hicks gives Castille the right of first refusal to purchase a four (4) acre tract of land and the American Tower Lease currently in effect on said land, said four acres more fully described by metes and bounds on Exhibit "A" attached hereto and incorporated herein for all purposes.
>
> Such right of first refusal shall be exercised within sixty (60) days of receipt of written notice via certified mail, return receipt requested, from Hicks to Castille, that Hicks no longer desires to use such real estate or desires to sell same. In the event Castille does not exercise the right to purchase within sixty (60) days, this right of first refusal shall terminate and be of no further force and effect.
>
> DATED this 30 day of May, 2006.

2

Both Hicks and Castille signed the Agreement. The issue in this case centers on whether the Agreement would permit the sale of the .28 acre subject to the lease or whether the four-acre tract must remain intact.

The parties agree that, on April 21, 2008, Hicks sent Castille a notice of intent to sell a .28-acre tract included in the four-acre tract on which Castille held a right of first refusal. According to Hicks, Castille then had sixty days to exercise his then-matured option to purchase the .28 tract on the same terms to which American Tower and Hicks had agreed: $50,000.00. Castille did not exercise his option to purchase the .28 acre. Instead, on June 18, 2008, he filed suit for declaratory relief. On competing motions for summary judgment, the trial court granted Castille's motion, denied Hicks's motion, and awarded Castille $5,200.00 in attorney's fees.

## Standard of Review

By twelve issues, Hicks contends that the trial court erroneously granted Castille's motion for summary judgment and erroneously denied his motion for summary judgment. Both parties' motions sought summary judgments that would declare the parties' rights under the agreement, and each party requested attorney's fees.

We look to the procedure used to resolve the issue below to determine the standard of review on appeal. City of Galveston v. Tex. Gen. Land Office, 196 S.W.3d 218, 221 (Tex.App.—Houston [1st Dist.] 2006, pet. denied). When a trial court resolves a declaratory judgment action on competing motions for summary judgment, "we review the propriety of the declaratory judgment under the same standards that we apply in reviewing a summary judgment." Id.

We review a trial court's decision to grant or to deny a motion for summary judgment *de novo*. See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex., 253 S.W.3d 184, 192 (Tex. 2007). Although the denial of summary judgment is ordinarily not appealable, we may review such a denial when both parties moved for summary judgment and the trial court granted one and denied the other. Id. When reviewing competing motions for summary judgment, we review the summary judgment evidence presented by each party, determine all questions presented, and render the judgment that the trial court should have rendered. Id.; FWT, Inc. v. Haskin Wallace Mason Prop. Mgmt., L.L.P., 301 S.W.3d 787, 792 (Tex.App.—Fort Worth 2009, pet. filed).

Analysis

A. Rules of Construction

The trial court's judgment adopted Castille's construction of the Agreement. Castille reads the Agreement as allowing Hicks to sell the four-acre tract subject to the right of first refusal only as one entire parcel.[1] In other words, he reads the Agreement as one which would prohibit Hicks from selling a portion, rather than the entirety, of the

---

[1] Alternatively, Castille argues that the terms of the contemplated sale of the .28 acre from Hicks to American Tower for $50,000.00 was not commercially reasonable. We have no evidence before us that the terms of the contemplated sale were unreasonable. Assuming we may consider Castille's affidavit for the proposition that the terms of the sale were commercially unreasonable, we conclude that his general statements regarding the fair market value per acre of farm land (specifically excluding conveyance of mineral rights) in Wheeler County do not directly address the price per acre on which improvements have been made. That is to say, to the extent Castille's affidavit can be considered, it is not relevant to the fair market value of land in Wheeler County on which a tower structure has been erected.

4

four-acre tract. Hicks, on the other hand, reads the Agreement without such restriction and maintains that the Agreement permits such a sale of a portion of the four-acre tract so long as he notifies Castille in accordance with the terms of the Agreement.

In construing a written contract, our primary concerns are to ascertain and to give effect to the parties' intentions as expressed in the document. Frost Nat'l Bank v. L&F Distribs., Ltd., 165 S.W.3d 310, 311–12 (Tex. 2005). In doing so, we consider the entire writing and attempt to harmonize and give effect to all of the provisions of the contract by analyzing the provisions with reference to the whole agreement. Id. at 312. We do not give any single provision controlling effect. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003). We construe a contract "from a utilitarian standpoint bearing in mind the particular business activity sought to be served" and "will avoid[,] when possible and proper[,] a construction which is unreasonable, inequitable, and oppressive." Frost Nat'l Bank, 165 S.W.3d at 312 (quoting Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527, 530 (Tex. 1987)). If, after we apply the relevant rules of construction, we can give a contract a definite or certain legal meaning, the contract is unambiguous, and we construe it as a matter of law. Id. A contract is not ambiguous simply because the parties disagree over its interpretation.[2] Markert v. Williams, 874 S.W.2d 353, 355 (Tex.App.—Houston [1st Dist.] 1994, writ denied). If a contract may be construed in two ways, one of which validates the contract and the other of which invalidates it, we must adopt the construction that validates the contract. Harris v.

_____

[2] We add that a party may not introduce parol evidence to vary the terms of an unambiguous contract. Markert, 874 S.W.2d at 355. For this reason, we do not consider the contents of Castille's affidavit concerning the negotiations surrounding the Agreement. Even were we to consider the affidavit, Castille's intentions do not change the unambiguous terms of the written right of first refusal.

5

Rowe, 593 S.W.2d 303, 306 (Tex. 1980); Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n, 205 S.W.3d 46, 56 (Tex.App.—Dallas 2006, pet. denied).

B.      Rights of First Refusal

1.      What a holder of a right of first refusal can do

A right of first refusal, also called a preferential right or a preemptive right, is a right granted to a party giving him or her the first opportunity to purchase property if an owner decides to sell it. Mandell v. Mandell, 214 S.W.3d 682, 688 (Tex.App.—Houston [14th Dist.] 2007, no pet.); Abraham Inv. Co. v. Payne Ranch, Inc., 968 S.W.2d 518, 524 (Tex.App.—Amarillo 1998, pet. denied). Sister courts have described a preferential right as a dormant option. Mandell, 214 S.W.3d at 688; A.G.E., Inc. v. Buford, 105 S.W.3d 667, 673 (Tex.App.—Austin 2003, pet. denied). A right of first refusal is generally well understood in the business world to mean that the rightholder must be given an opportunity to purchase the property from the property owner on the terms offered by any third party. Abraham Inv. Co., 968 S.W.2d at 524.

Once the property owner provides the terms of that third-party offer to the rightholder, the rightholder then has the power to accept or reject the offer. City of Brownsville v. Golden Spread Elec. Coop., Inc., 192 S.W.3d 876, 880 (Tex.App.—Dallas 2006, pet. denied); Abraham Inv. Co., 968 S.W.2d at 524. Indeed, when a property owner expresses the intention to sell the property, the rightholder is obligated to elect to either purchase the property or permit the property owner to sell it. Mandell, 214 S.W.3d at 688; A.G.E., 105 S.W.3d at 673. So, generally, when the property owner

6

gives notice of his intent to sell, the preferential right matures or "ripens" into an enforceable option. Golden Spread Elec. Coop., 192 S.W.3d at 880; Abraham Inv. Co., 968 S.W.2d at 524. The terms of the option are formed by both the provisions granting the preferential right and the terms and conditions of the third-party offer presented to the rightholder. Abraham Inv. Co., 968 S.W.2d at 524–25.

The rightholder's exercise of the option to purchase must be positive, unconditional, and unequivocal. Tex. State Optical, Inc. v. Wiggins, 882 S.W.2d 8, 10–11 (Tex.App.—Houston [1st Dist.] 1994, no writ). If the rightholder proposes a new demand, condition, or modification of the terms, he is treated as having rejected the offer. See Golden Spread Elec. Coop., 192 S.W.3d at 880; Tex. State Optical, 882 S.W.2d at 11. When the rightholder notifies the property owner of his or her acceptance of the offer, a contract between the rightholder and the property owner is created. Golden Spread Elec. Coop., 192 S.W.3d at 880.

2.      What the holder of a right of first refusal cannot do

Though a right of first refusal may mature into an option, it remains distinct from an option in that the holder of the option purchases the right to compel a sale of property on the stated terms before the expiration of the option. See Comeaux v. Suderman, 93 S.W.3d 215, 219–20 (Tex.App.—Houston [14th Dist.] 2002, no pet.); see also Sinclair Ref. Co. v. Allbritton, 147 Tex. 468, 475, 218 S.W.2d 185, 188–89 (Tex. 1949). The holder of a right of first refusal has no right to compel a sale or to prevent a sale; he or she has only the right to be offered the property at a fixed price or at a price offered by a bona fide purchaser if and when the owner decides to sell. Abraham Inv.

7

Co., 968 S.W.2d at 525; Riley v. Campeau Homes, Inc., 808 S.W.2d 184, 187 (Tex.App.—Houston [14th Dist.] 1991, writ dism'd). The holder of a right of first refusal cannot compel an unwilling owner to convey the property. Riley, 808 S.W.2d at 187.

Unless the property owner and the rightholder have agreed to terms on price, the rightholder cannot fix the price because the price is determinable only when a willing seller receives an acceptable offer from a bona fide purchaser. See Forderhause v. Cherokee Water Co., 623 S.W.2d 435, 439 (Tex.Civ.App.—Texarkana 1981), rev'd on other grounds, 641 S.W.2d 522 (Tex. 1982). The rightholder does not have the privilege to negotiate with the seller regarding the terms of the third-party offer. See Abraham Inv. Co., 968 S.W.2d at 525. The owner of property subject to a right of first refusal remains the master of the conditions under which he or she will relinquish interest in the property so long as those conditions are commercially reasonable, imposed in good faith, and not specifically designed to defeat the right of first refusal.[3] See McMillan v. Dooley, 144 S.W.3d 159, 176 (Tex.App.—Eastland 2004, pet. denied) (quoting W. Tex. Transmission, L.P. v. Enron Corp., 907 F.2d 1554, 1563 (5th Cir. 1990)).

---

[3] Castille points to no evidence that the contemplated sale was specifically designed to defeat his rights to the tower lease. Though the sale may have ultimately done so, to the extent the Agreement conferred any rights to the lease to Castille, we have no evidence that the contemplated sale was designed with that specific purpose in mind. Since he was not a party to the lease between Hicks and American Tower, Castille could not have agreed to the termination of the lease. Had Castille exercised the option to purchase when it matured, he may have then been in a position to negotiate with American Tower regarding the status of the lease.

C.    Construing the Agreement

Having reviewed the rules we must employ to construe agreements in general and the general principles concerning rights of first refusal, we now examine the Agreement between Hicks and Castille.

We begin by observing that alienability is a legal incident of property, and restraints against it are generally contrary to public policy. See Trustees of Casa View Assembly of God Church v. Williams, 414 S.W.2d 697, 702 (Tex.Civ.App.—Austin 1967, no writ). The right of alienation is an inherent and inseparable quality of an estate in fee simple. Potter v. Couch, 141 U.S. 296, 315 11 S.Ct. 1005, 35 L.Ed. 721 (1890); Williams v. Williams, 73 S.W.3d 376, 379 (Tex.App.—Houston [1st Dist.] 2002, no pet.). A restraint on alienation is "an attempt by an otherwise effective conveyance or contract to cause a later conveyance . . . to impose contractual liability on the one who makes the later conveyance when such liability results from a breach of an agreement not to convey; or . . . to terminate or subject to termination all or part of the property interest conveyed." Navasota Res., L.P. v. First Source Tex., Inc., 249 S.W.3d 526, 537-538 (Tex.App.—Waco 2008, pet. denied) (adopting, as have other Texas courts, the Restatement's definition of restraint on alienation and quoting RESTATEMENT OF PROPERTY § 404(1)(b), (c)).[4] "A restriction . . . not forbidding alienation to particular

---

[4] See Procter v. Foxmeyer Drug Co., 884 S.W.2d 853, 858–59 (Tex.App.—Dallas 1994, no writ) (providing a thorough discussion of the applicability of the Restatement (Second) to restraints on alienation in the commercial transaction context as opposed to the donative transfer context); see also Sonny Arnold, Inc. v. Sentry Sav. Ass'n, 633 S.W.2d 811, 814 (Tex. 1982); Mattern v. Herzog, 367 S.W.2d 312, 319 (Tex. 1963); Deviney v. Nationsbank, 993 S.W.2d 443, 449 (Tex. App.—Waco 1999, pet. denied); Randolph v. Terrell, 768 S.W.2d 736, 738–39 (Tex. App.—Tyler 1987, writ denied).

persons or for particular purposes only, but against any and all alienation whatever during a limited time, of an estate in fee, is likewise void, as repugnant to the estate devised to the first taker, by depriving him during that time of the inherent power of alienation." Williams, 73 S.W.3d at 379–80 (quoting Potter, 141 U.S. at 315); see also O'Connor v. Thetford, 174 S.W. 680, 681, 682 (Tex.Civ.App.—San Antonio 1915, writ ref'd) (observing that "[h]e would certainly be a poor owner who was required to hold property all his life without the power to sell it").

Were we to adopt Castille's construction of the Agreement, we would be enforcing what appears to be an unreasonable restraint on alienation: an outright prohibition of indeterminate duration from selling any portion of the land in question less than four acres. See Reagan Nat'l Adver. of Austin v. Capital Outdoors, 96 S.W.3d 490, 494–95 (Tex.App.—Austin 2002, pet. granted, judgmn't vacated w.r.m.) (concluding that "appellant's construction of the lease clause is too broad and would create an unreasonable restraint on alienation were we to adopt it").

Castille has not directed this Court to a case which would support the position that a landowner may not partition or sell portions of the property described in an agreement conferring a right of first refusal.[5] And we have found but one that briefly

---

[5] We note the distinction between the instant case and the situations examined in such cases as FWT, Inc., 301 S.W.3d at 792–93, McMillan, 144 S.W.3d at 178–79, and Riley, 808 S.W.2d at 189. In these cases, the terms of the contemplated sale went beyond the scope of the right of first refusal. As a general rule, the holder of a preferential right cannot be compelled to purchase assets beyond those included within the scope of the agreement subject to the preferential right in order to exercise that right. See Navasota Res., 249 S.W.3d at 535. Unlike the rightholders in these cases, Castille is not faced with an offer that goes beyond the scope of the agreement. To the

addresses this issue; it, however, does so in a slightly different context and supports the position contrary to Castille's.  See Barrows v. Ezer, 668 S.W.2d 854, 855 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).  At issue in Barrows was the enforceability of a provision in a will that required the devisees to keep the bequeathed ranch intact for twenty-five years and also maintain the name of the ranch and make certain that the livestock on the ranch bore the testator's recorded brand for twenty-five years.  Id.  The appellate court affirmed the trial court's conclusion that this attempted restraint on alienation was void.  Id. at 856.  Of course, the will provision in Barrows attempted to do more than simply keep the ranch intact, but the case remains instructive in its treatment of the restraint on alienation as it relates to an attempt to prohibit a transfer of a portion of the land at issue.

Similarly, here, the Agreement, as Castille would have us read it, would serve to wholly prohibit Hicks – regardless of his compliance with the notice requirements – from selling .28 acre, one acre, two acres, or any portion of the land less than four acres.  This construction, then, would amount to a nearly absolute prohibition against conveying any of the land less than four acres, and we have no concrete indication of the duration from which we could determine whether it is reasonable.[6]  Such a restraint on alienation of property has long been disfavored.

_____

contrary, American Tower offered to purchase from Hicks only .28 acre of the four acres on which Castille holds a right of first refusal.

[6] O'Connor and a number of other cases suggest that even restrictions that amount to an outright prohibition of transfer may be valid if those restrictions are of reasonable duration.  174 S.W. at 681.  Here, there is no express duration of the Agreement.

Although the Agreement does refer to "the four-acre tract," it does not specifically provide that the right of first refusal is limited to only the four-acre tract intact. The parties could have negotiated more specific terms but did not do so. We will not read terms into the Agreement, especially not when those terms would lead to an unreasonable construction.

Adhering to the relevant rules of construction, we have examined the Agreement from a utilitarian perspective, bearing in mind the purposes and restrictions associated with a right of first refusal, and have construed the Agreement in such a way as to not invalidate it. See Frost Nat'l Bank, 165 S.W.3d at 312; Hackberry Creek Country Club, 205 S.W.3d at 56. Having done so, we conclude that the Agreement permits the sale of a portion of the four acres so long as Hicks gives proper notice in accordance with the Agreement. To hold otherwise would cause the right of first refusal to represent an unreasonable restraint on alienation by prohibiting Hicks from selling any portion of the tract less than four acres. The converse application would also be unreasonable, permitting the right of refusal to do something it must not do; to hold that Castille has a right to buy all four remaining acres intact would run afoul of the well-established rule that a holder of a right of first refusal cannot compel the owner to sell the property at issue. That is, to read the Agreement to mean that Hicks can only sell the entire four-acre tract of land could have the practical effect of forcing him to sell land that he does not wish to sell. We will not construe the Agreement to create a right of first refusal that is inconsistent with the principles concerning such rights.

Conclusion

In order to conclude, as did the trial court, that the contemplated sale from Hicks to American Tower constituted a breach of the Agreement, one must read the Agreement as permitting sale of *only* the four-acre tract in its entirety. This all-or-nothing construction is problematic; either it disallows Hicks to sell a portion of his property infringing on his ownership of the property or it compels him to sell the land in its entirety which may be and, in this instance, is more than he desired to sell.[7]

The trial court erred by concluding that Castille has a contractual right to purchase the entire four-acre tract intact, that Castille also had a contractual right to the tower lease benefits, and that the contemplated sale between Hicks and American Tower would represent a material breach of the Agreement. Application of the rules of construction lead us to conclude that the Agreement permitted the sale of a portion of the four acres so long as Hicks gave proper notice and the third-party offer was commercially reasonable, imposed in good faith, and not specifically designed to defeat the right of first refusal. Since the parties agree that Hicks gave proper notice and that Castille did nothing to exercise his then-matured option to purchase the .28 acre and since there is no evidence before this Court to indicate that the terms of the sale between Hicks and American Tower were commercially unreasonable, not imposed in good faith, or specifically designed to defeat Castille's right of first refusal, we render the judgment that the trial court should have rendered: The evidence establishes that Hicks

---

[7] Taken to its logical conclusion, Castille's construction of the agreement that Hicks must sell the four-acre parcel in its entirety *and* with the tower lease in effect would vest in Castille the power to force Hicks and American Tower to remain in the lease agreement. We will not read a contract in such a way as to lead to an absurd result.

13

gave the requisite notice of his intent to sell .28 acre of the four acres and provided the terms on which he contemplated selling to American Tower; that, upon such notice, Castille's right of first refusal as to the .28 acre matured into an option to purchase the .28 acre on those terms; that Castille failed to exercise such option; and that, due to such failure, Castille's right to purchase the .28 acre expired.

Because we so hold, we reverse the trial court's summary judgment in favor of Castille and render judgment in favor of Hicks that Castille's right of first refusal was invoked and, having remained unexercised, lapsed as to the .28 acre.  We also reverse the trial court's award of attorney's fees to Castille and remand the cause to the trial court to reconsider the equitable and just award of reasonable and necessary attorney's fees.  See TEX. CIV. PRAC. & REM. CODE ANN.  § 37.009 (Vernon 2008); Nw. Austin Mun. Util. Dist. No. 1 v. City of Austin, 274 S.W.3d 820, 840 (Tex.App.—Austin 2008, pet. denied).

Mackey K. Hancock
Justice
